## McQueen v. Commonwealth.

(Decided October 27, 1922.)

### Appeal from Rockcastle Circuit Court.

1. Indicmtent and Information—Defective Count.—Although one count in an indictment for murder may be defective, if the verdict of guilty was based upon another count which was not defective, the overruling by the court of a demurrer to the defective count is not prejudicial error.

2. Homicide—Threats.—On a charge of murder evidence that decedent had shortly before the killing threatened to report the defendant to the authorities for moonshining, was competent to show motive for the crime when knowledge of such threats was brought home to the defendant.

3. Homicide—Threats—Evidence.—It was proper for the court in admitting such evidence, for the purpose of showing motive, to admonish the jury that it was admitted for that purpose only and was not to be considered by them as evidence of defendant's guilt.

4. Criminal Law—Confession—Evidence.—Although a written confession of defendant, improperly obtained, was correctly ruled out by the court, any extraneous fact or circumstance disclosed to the officers by the confession, and the truth of which they thereafter verified, was competent evidence against him where the articles or things found by the officers, or any of them, because of the disclosures in his confession, were thereafter identified as the property of the decedent.

5. Criminal Law—Confession—Evidence.—Although the court erred in permitting the witnesses to state that defendant said in his improperly obtained confession that two watches found as a result of the confession and certain money recovered as a result thereof, were the property of decedent and had been taken from his body after his death, in the light of other competent evidence of confessions and other competent statements made to other parties, and of all the facts and circumstances unerringly pointing to appellant's guilt, the improperly admitted evidence is not such prejudicial error as will authorize a reversal.

6. Criminal Law—Confession—Evidence.—Any extraneous fact or circumstance disclosed in an improperly obtained confession, the

truth of which is thereafter verified by a search at the place indicated in the confession, and there is found at such place articles, some of which are identified as the property of the decedent, the evidence of defendant's statement where these articles could be found, and the fact that they were so found are competent against him when the articles, or any of them, are identified as the property of or had been just before the killing in possession of the decedent.

7.   Criminal Law—Question of Age—Houses of Reform.—If, on the trial of one charged with crime, the question arises as to the age of the defendant, involving the duty of the court to send him to the reform school, the court should hear the evidence on the question of age out of the hearing of the jury, and pass upon it without submitting same to the jury.

LEWIS & LEWIS and S. D. LEWIS for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. Mc-GREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Appellant and Frank Cornett were jointly indicted charged with the murder of Isaac Coyle.

The first count in the indictment charges them jointly with the crime, and in another it is charged that Cornett shot and killed Coyle and appellant was then present and unlawfully aided, abetted and assisted therein. In a third count appellant is charged with the shooting and killing, and that Cornett was then present aiding, assisting and abetting; and in another count it is charged that one or the other of the defendants shot and killed Coyle as the result of a conspiracy theretofore entered into between them, and in furtherance of such conspiracy, and while the same was in existence, and that the other was then and there present aiding, assisting and abetting.

Appellant, on his separate trial, was found guilty of murder and sentenced to death, and the trial court having refused him a new trial, he has appealed.

In the summer or fall of 1921, as the result of some arrangement between Isaac Coyle and Robert McQueen, the father of appellant, there was erected on Robert McQueen's place in Rockcastle county, and about one hundred yards from his residence, a small building of one room, which from that time to the 2nd of March, 1922, was occupied by Coyle, a man sixty-two years of

age, both as a residence and as a store, and he conducted a small country store therein.   The storehouse was on what is referred to in the record as the "state road," which appears to be the dividing line between the counties of Rockcastle and Jackson, the storehouse being on the Rockcastle county side.

Coyle lived in this small house and operated his store therein from the time of its erection until the 2nd day of March, 1922, and there lived with him most of that time a girl 18 or 19 years of age by the name of Mary Bowman, but on the 2nd day of March, before the killing, she had gone to her father's home, a mile or so away, in Jackson county, and Coyle was the sole occupant of the house on that night.   About nine o'clock on that night, or thereabouts, a shot was heard, and on the next day the store was closed and locked on the outside with a padlock, and Coyle was not seen nor heard from. On Friday night some of the neighbors, becoming suspicious, went into the store and there found the body of Coyle lying on the floor with a hole in his head, covering the left eye, and a quilt or covering of some kind spread over his body.

On Saturday an inquest was held over the body of Coyle, and late that afternoon or early that night, appellant and Cornett were arrested charged with the murder, and early on Sunday morning were taken to the jail at the county seat of Rockcastle county where they were, by order of the county judge, placed in separate cells or compartments so they could not communicate with each other.

Thereafter, they were jointly indicted by the grand jury of Rockcastle county, and appellant at the May term of that court was placed on his separate trial with the result above stated.

Five reasons are relied upon as ground for reversal: (1) Because of the error of the court in overruling a demurrer to that part of the indictment charging Cornett with the killing and appellant with aiding and abetting; (2) because of the error in the admission of incompetent evidence prejudicial to appellant; (3) because of the court's alleged error in admonishing the jury with respect to certain evidence of the witness, Mary Bowman; (4) because of alleged error in overruling defendant's motion at the close of all the evidence to discharge him on the ground that he was an infant under seventeen years of age at the time of the trial and at the time

of the commission of the crime; and (5) error of the court in instructing the jury and in failing to properly instruct the jury.

We will proceed to discuss these questions in the order named.

(1). The alleged defect is in the second count of the indictment wherein Cornett is charged with unlawfully, feloniously and maliciously shooting and wounding Coyle, from which he died, and that at the time appellant was then and there present and near enough so to do, and did unlawfully, willfully and feloniously aid, abet, assist, encourage, advise and command Cornett to so shoot and wound Coyle in the manner and form set forth.

The contention is that as there was a failure therein to allege that appellant aided, abetted, etc., the shooting and killing of Coyle malicously or with his malice aforethought, that this count is only good against appellant as a charge of manslaughter and authorizes his conviction only of that crime, and not of murder. But from the evidence in this case it is wholly unnecessary to consider whether that count of the indictment would support a conviction for murder, for the whole evidence shows that appellant himself did the shooting of Coyle, and his conviction, therefore, necessarily rests upon and was found under another and different count in the indictment. It results, therefore, that even if the court erred in overruling the demurrer to the count in question, it could not possibly have been prejudicial to appellant's substantial rights.

(2) In considering the alleged error in the admission of incompetent evidence, it will be necessary to sufficiently go into a statement of the evidence upon which the conviction rests to elucidate the competency or incompetency of the evidence objected to. The witness, Mary Bowman, stated that she had lived a part of the time with Coyle at the store where he resided since he had been living there, but that at the time of the killing she was not there, but had been there the afternoon before for about an hour and a half; that she left there about half past three and left appellant and Frank Cornett both there; that appellant lived with his father and mother only a short distance from the store, and Cornett lived with his father, about a quarter of a mile away, in Jackson county. She also identified one of the watches which had been found in a rock pile near the home of

Robert McQueen as her own property, and stated that
for about two weeks before the killing it had been in the
possession of Coyle, and she likewise identified a chain
attached to the watch as belonging to Coyle.  The other
watch, however, she failed to identify and said, in sub-
stance, that she was familiar with Coyle's watch and
that she did not believe that to be the same watch, al-
though the general appearance of it was the same, but it
did not have certain distinguishing marks that were on
his watch.  She further stated that on the afternoon be-
fore the killing, when she was at the store, Coyle had two
rolls of money in bills; that he had one of them in his
pocket and went to a flour barrel for the purpose of put-
ting the other, a larger roll, therein, which was his cus-
tom; that she did not know the denominations of the bills
nor how much was in the two rolls, and that decedent
lived about ten miles from the nearest bank.  She stated
that on the Thursday afternoon she was at the store
there had been some trouble between the McQueen family
and Coyle, but she never heard either appellant or Cor-
nett say they did not like Coyle or that they had anything
against him.

The witness was then interrogated outside of the
presence of the jury and stated in substance that several
times about two weeks before he was killed she had
heard Coyle say he intended to "turn up" these two
boys for moonshining, and that upon one of those occas-
ions, the mother of appellant was present, but that upon
none of them was either appellant or his co-defendant,
Cornett, present.

After this interrogation of the witness in the absence
of the jury the court announced that he would permit
the Commonwealth to show by the witness that Coyle
was talking generally to the effect that he was going to
report McQueen to the authorities for moonshining, and
that such a talk was had in the presence of McQueen's
mother.

The witness was then again taken before the jury and
permitted in substance to tell the things heretofore re-
cited, and that he had also told her in substance the same
thing on the afternoon before he was killed, and that he
was going to town on the next Friday week and would
then report them, but this did not occur in the presence
of any other person.

The court, however, admonished the jury that this
evidence of what Coyle had said to the witness, threaten-

ing to inform the authorities that they were moonshining, was admitted for the purpose of showing motive on the part of the appellant to commit the crime charged, if it did show such motive, and for no other purpose, and directed the jury not to consider it as substantive evidence against the defendant.

While this witness did not bring home to appellant knowledge or notice of the threats Coyle had made, yet it is in evidence by another witness, to whom appellant subsequently made a confession, that the killing was done partly because "old man Coyle" had threatened to have him arrested for owning a moonshine still, and this evidence showing appellant's knowledge of these threats, is sufficient to make the statements of the Bowman girl competent as against him, if they are otherwise competent.

The argument for appellant is, however, that this evidence was wholly incompetent against appellant, because you cannot show that one accused of crime has committed other and distinct crimes from the one for which he is being tried.

But this contention overlooks the well-known and oft-recognized exception to that rule that the commission of such other offenses may be inquired into where it is necessary to establish identity, criminal knowledge, intent or motive, or be so interwoven with other evidence of the crime charged that they cannot be separated, or where such independent offenses were perpetrated for the purpose of concealing the crime charged.

Here the evidence in question, while not evidence of defendant's guilt of the murder, was unmistakably competent to show a motive upon his part to commit the murder, and when the knowledge of those threats by Coyle was brought home to him, it certainly furnished evidence of such motive.   Bullington v. Commonwealth, 193 Ky. 520; Bishop v. Commonwealth, 109 Ky. 558; O'Brien v. Commonwealth, 115 Ky. 628; Brashear v. Commonwealth, 118 Ky. 492; Choate v. Commonwealth, 176 Ky. 427.

In this connection there is some complaint by appellant's counsel of the admonition given to the jury, to which we have referred.  That admonition was for the benefit of the defendant, and very properly said to the jury that they should not consider this as substantive evidence against him, but might consider it only for the purpose of showing motive on his part to commit the

crime, if it did show such motive. The admonition was entirely proper and gives no ground of complaint to appellant.

Another complaint is that the court improperly permitted the Commonwealth to show statements of appellant to the officials who were in charge of him while he was under arrest, alleged to have been made by him after a grilling or sweating as prohibited by our anti-sweating act.

The facts upon which this contention is based are that the two defendants were placed in jail on Sunday morning, and, according to the direction of the county judge, they were placed in separate cells or compartments; that beginning either Sunday or Monday the two defendants were separately brought out from the jail to an office in the courthouse and there, in the presence of the county judge, the sheriff, the jailer and sometimes the county attorney, they were separately questioned about their connection with or knowledge of the killing of Coyle, and were required to give a detailed statement of where they were on Thursday and Thursday night, Friday and Friday night, and a great many questions about other details were propounded to them. Upon each of those occasions each of the defendants denied his guilt of this murder or any knowledge of it. It appears from the evidence of the county judge and others that neither of the boys at the time of these grillings were represented by counsel, or relative, or friend, and they were each told it would be better for them to tell the truth, and that it might be easier on them if they did, and similar expressions, and upon one occasion one or both of them were told by someone present, in substance, that it would be better to tell the truth and go to the reform school than to submit to a trial and take the chance of being convicted.

Finally, however, about Wednesday of the week beginning on Sunday, when Cornett had again been brought out for questioning and had again denied any connection with or knowledge of the crime, when he was taken back to the jail by the jailer he was falsely told by that official that he had as well tell the truth about it, that McQueen had already confessed and said he, Cornett, had fired the shot which killed Colye. When this false statement was made to Cornett he became angry and promptly said McQueen was a liar and that McQueen himself had shot Coyle. He was then asked by the jailer if he wanted

to make that statement to the county judge, and he said he did, and then went before the county judge and made a statement of the whole thing. Thereafter McQueen also confessed, after being informed of Cornett's confession, and the two joined in a written confession prepared by the county judge and signed by them, but that paper is not in this record for the reason presumably that the lower court declined to permit it to be introduced against appellant.

The written confession of appellant was ruled out, but the court permitted the county judge in his evidence before the jury to tell them, in substance, that he had had a conversation with defendant after the killing of Coyle, and that defendant had told him where certain money, watches, shotgun shells and shotguns could be located, and that the watches he spoke of he said were the watches of Isaac Coyle; that he told witness the watches could be found in a rock pile at the back of his father's barn, and that there were two of them, and that witness went to the place and found the watches as indicated in appellant's statement; that appellant had told him his mother had the money he got from Coyle after he was killed, and that he demanded of the mother certain money her son had given her the Friday or Saturday before, and the mother turned it over to him; he identified the watches as being the same found in the rock pile and the money as being the same given to him by appellant's mother. He was also permitted to state that appellant said he threw the shotgun hull down at the door, but as they left the building they picked it up and carried it across the road in the edge of Jackson county onto an old deserted road and threw it down, and that witness had found it at the place indicated in this statement of appellant, and it was an empty hull meant for a twelve gauge shotgun, and then identified the empty shell; he then identified other loaded shells which he says were like the empty hull, and came out of a shotgun which he had found at the residence of appellant's father. Evidence similar to this was also admitted from the sheriff and another official of the county.

The earnest contention is made by counsel for appellant that all of this evidence is incompetent against him, because of the provisions of our anti-sweating act, the evidence being, as contended by counsel, equivalent to an admission of the whole confession.

We think the court erred in permitting the witnesses to state that defendant said the two watches found in the rock pile, and the whereabouts of which were disclosed in the statement of appellant, were the property of Isaac Coyle, or that the money which he said he had given to his mother was money he got from Coyle after he was killed. These two statements are so closely allied to and so intimately connected with the improperly obtained confession, that they can hardly be separated from or said to be anything but a part of the confession itself, and were, therefore, incompetent evidence against appellant. But in the light of other competent evidence of confessions and statements made to two other witnesses, and of all the facts and circumstances so unerringly pointing to appellant's guilt, we are not prepared to say under our Code provisions in this state there was such prejudicial error as will authorize a reversal.

While the evidence that the watches and money were taken from Coyle after his death, or were the property of Coyle, was incompetent, any extraneous fact or circumstance disclosed to the officers by the confession, and the truth of which they thereafter verified, may properly be offered in evidence against the defendant, and the fact that he stated the watches, the empty hull and the money would be found at certain places, when the truth of those statements was verified and the articles found at the places designated by him, was competent evidence against him if any of the things so found were identified as the property of Coyle.

In this case we have the two watches found at the place pointed out by appellant, and one of those watches is identified as a watch which Coyle had in his possession the afternoon before he was killed; the money is found just where he said it was and is produced, and while it is not identified as the same money which Coyle had the day before his death, taken in connection with the finding of the watch, which was identified, it was competent evidence for what it was worth, as was also the finding of the shell at the point where appellant stated it would be found.

This evidence, so disclosed by appellant's statements, is not strictly speaking a part of his confession; it is, to be true, evidence the Commonwealth was enabled to produce because of his statement, but is really evidence of extraneous facts which the Commonwealth was able to produce by verification of defendant's statements, and

which were not a part of the confession and are, therefore, competent evidence.

If one in custody makes an involuntary confession, or one which is extorted from him by duress, the confession itself is not admissible in evidence against him; but if in making the confession he makes statements of extraneous facts by reason of which there is thereafter produced against him evidence so disclosed, it is held to be competent if the thing in evidence is identified other than by the confession itself. As said in 9 R. C. L., p. 196:

"If one accused of crime in making an involuntary confession makes statements of extraneous facts, and, in consequence of the information thus obtained from him, any material fact is discovered, it may be shown that the discovery was made conformably with such information." And as said in 16 C. J., p. 731:

"Where an involuntary confession discloses incriminating evidence which subsequently, on investigation, is proved to be true, or where the confession leads to the discovery of facts which in themselves are incriminating, so much of the confession as discloses the incriminating evidence and relates directly thereto, but not the confession *in toto,* is admissible; and the facts discovered in consequence of such involuntary confession may be proved." Rusher v. State (Ga.), 47 A. S. R. 175, and note; Whitley v. State, (Miss.), 53 L. R. A. (O. S.) 402, and note. We therefore hold that all of the evidence of the county judge to the effect that defendant told him where he would find the watches and the money and the shotgun hull, and the fact that he did find them where defendant said, was competent evidence against him.

But outside of the written confession, and outside of the confession made to the officers, appellant made two other statements equivalent to a confession, the competency of which are not questioned. Lewis Brown states he was in the jail at the same time appellant was, and that in a conversation with appellant, he said in substance that he and Cornett were drinking one night and went to the house of Coyle, and Cornett called Coyle to the door and he, McQueen, shot him; that they went into the house and searched for the money and got about sixty dollars, and covered Coyle's body with a quilt and locked the door as they came out, and that appellant had told him substantially the same thing upon two or three occasions, and had told him at one time that one reason

he killed Coyle was that he had information Coyle was going to report him for having a moonshine still in his possession.   On another occasion when appellant had escaped from jail he gave himself up to a man named Hollingsworth, who was not an officer, and Hollingsworth testifies that while appellant was thus in his custody he stated to him that he had reasons for killing Coyle; that he and Cornett went to Coyle's not meaning any harm but to get some sugar to make a mash, that Cornett called Coyle to the door and Coyle asked who it was and when they told him he said: "Where is my woman?" and when they told him they did not know anything about his woman Coyle said, "You are damned lairs, you fellows have been out with my woman," and that Coyle was by some means making a lick at appellant with a knife, and Cornett was right back of him and he could not back off, and he shot and killed him.

In the light of these two voluntary statements and of the other conclusive evidence to which we have above referred as competent, we are unwilling to reverse the judgment because of the incompetent evidence stated above.

(3)   In discussing the competency of the evidence of the witness, Mary Bowman, we have already disposed of question number three which is a complaint with respect to the admonition given to the jury.

(4) This alleged error involves the correctness of the action of the court in overruling defendant's motion, at the close of all the evidence, to discharge him because he was at the time of the trial and at the time of the killing under seventeen years of age. This motion is predicated upon provisions of section 2095b-13, Kentucky Statutes, providing that when any boy or girl under the age of eighteen shall be arrested charged with the commission of a crime which would subject him or her to imprisonment, the trial court may, by the consent and at the request of the accused or his or her parent or guardian, arrest the progress of the trial and commit the accused to the reform school.

On the trial in this case the question of the defendant's age arose, and the court in the absence of the jury heard the evidence on this issue, which was to some extent conflicting, but which strongly tended to show that he was past eighteen years of age at the time of the killing, and the court thereupon decided as a fact

that he was over eighteen years of age, and overruled the motion of appellant.

Without going into the conflicting evidence it is sufficient to say that the weight of it decidedly supports the finding of the court, and his action in disposing of it himself without submitting the question to the jury was entirely proper.    Under the statute it was a jurisdictional fact and was properly passed on by the court. Waters v. Commonwealth, 171 Ky. 457.

(5)   The only complaint of the instructions is predicated upon the same objection that was made to one count of the indictment, and what we have said with respect to the action of the court on the demurrer to that count of the indictment applies equally to the criticism of the instructions.

Finding no error prejudicial to the substantial rights of the appellant, the judgment must be affirmed. It is so ordered.

Whole court sitting.