## Herd v. Commonwealth.

April 30, 1943.

Astor Hogg and J. B. Carter for appellant.

Hubert Meredith, Attorney General, and Frank A. Logan, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellant, a negro, shot and killed James Minor, also colored, on Church Street in the town of Lynch, following a quarrel which had occurred a short time before at appellant's home where Minor, in a fit of temper over his losses, had broken up a gambling game conducted by appellant. Both parties had left the house, and, according to appellant, the subsequent encounter was accidental. Witnesses for the Commonwealth testified that appellant was the aggressor and shot Minor four times while the latter was trying to shield himself behind a companion, and once after he had fallen to his knees; and that all of the shots entered from the back. According to appellant, Minor was trying to get to him with a knife, and the shooting was in self-defense. Minor is shown to have been a dangerous trouble-maker, while appellant was shown by the testimony to bear a good reputation. While one of the grounds for reversal is that the verdict convicting appellant of the crime of wilful murder and fixing his punishment at life imprisonment was flagrantly against the evidence, nevertheless, counsel in their brief frankly state that they cannot conscientiously stress such a contention. In view of this statement and our own conclusion that the evidence for the Commonwealth was amply sufficient to support the verdict, we shall not comment upon the testimony further than is necessary to illustrate the factual basis of appellant's insistence that some of the Commonwealth's testimony was incompetent, and that, in any event, appellant was entitled to a new trial because of newly discovered evidence.

It seems that appellant surrendered to one of two peace officers, both of whom testified that appellant stated he would have killed Minor when he broke up the gambling game at appellant's house, but that he "didn't want to nasty his house up." One of these officers, William Metcalf, also testified that appellant stated that

when he saw Minor on Church Street, he "just got out of the car and shot him." Appellant's statements were related by Metcalf on direct examination without objection, and during the cross-examination, when it was developed that appellant was under arrest when he was talking to Metcalf, appellant's attorney moved to exclude the evidence. Before the court had ruled, the Commonwealth's Attorney asked if the appellant's statements were made voluntarily and of his own will and accord, and upon the witness answering in the affirmative, the court overruled the motion. There appears to have been no objection to the testimony of the other peace officer, William J. Hilem, who followed Metcalf on the stand, and no motion was made to exclude his testimony. Appellant testified that Hilem arrested him and "wanted to know what I was giving up for," and asked him all about it, but does not claim that any pressure was brought to bear upon him or that he was in any way coerced or mistreated. However, appellant's counsel insist that Metcalf's testimony should have been excluded because of the provisions of KRS 422.110; and that the court further erred in ruling on the motion in the presence and hearing of the jury. That section reads:

"(1) No peace officer, or other person having lawful custody of any person charged with crime, shall attempt to obtain information from the accused concerning his connection with or knowledge of crime by plying him with questions, or extort information to be used against him on his trial by threats or other wrongful means, nor shall the person having custody of the accused permit any other person to do so.

"(2) A confession obtained by methods prohibited by subsection (1) is not admissible as evidence of guilt in any court. The trial judge shall determine the competency and admissibility of any alleged confession under the provisions of this section from evidence heard by him, independent of and without the hearing of the jury trying the case."

In the first place, it is perfectly apparent from what we have said that none of appellant's statements to the officers was obtained by "plying him with questions" or extorted "by threats or other wrongful means." Since appellant's statements were voluntarily made, they were clearly competent.

In the second place, the court was afforded no opportunity to rule on the admissibility of the confession "without the hearing of the jury," since it was testified to by the witness without objection. The motion to exclude was made in the presence of the jury, and if appellant's counsel desired the ruling on his motion to be announced "without the hearing of the jury," he should have made his wish known to the court. The purpose of the last literary paragraph of the quoted statute, added by the 1942 Amendment, was to abolish the theretofore, existing practice of submitting to the jury the question of whether or not a confession had been coerced.

The newly discovered evidence consists of the testimony of two witnesses, disclosed in their affidavits filed by appellant in support of his motion for a new trial, that a few minutes after the homicide, they passed by Minor's body lying on the street and saw a long keen bladed knife lying nearby. The inability of appellant to discover this testimony sooner is sufficiently shown; but we do not believe that it could have been considered other than as cumulative, and insufficient to have swayed the jury from its belief that the killing was premeditated, as well as unnecessary. It is true that the undertaker introduced by the Commonwealth testified that when he searched the clothes of the deceased, he found a closed "small-like" knife in his pocket, and that deceased's widow identified this knife as the only knife which the deceased owned. But the fact that Minor had a long "switch-blade" knife in his pocket when he left appellant's house was testified to by one of appellant's witnesses, and that he had this knife open in his pocket at the time of the shooting was admitted by one of the Commonwealth's eyewitnesses who stated: "Everybody knew he had a knife open in his pocket"; and, therefore, as we see it, the material question was not the size or character of the knife, but whether or not Minor was advancing toward appellant with it open in his hand at the time appellant shot him, as claimed by appellant and his main witness.

We have many times written that newly discovered testimony which is merely cumulative, and not such as we believe would cause a jury hearing it to render a verdict different from that previously rendered, is not of a character to justify us in directing a new trial of a defendant, who, according to the competent testimony of

158

the Commonwealth's witnesses, was guilty of the offense of which he was convicted.

Judgment affirmed.