# Harris v. Commonwealth.

March 22, 1946.

Elmer L. Brown for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Billy V. Harris, was convicted in the Daviess circuit court of the crime of grand larceny at the trial of an indictment so accusing him by the grand jury of that county, and was given a sentence of two years' confinement in the State Reformatory. His motion for a new trial was overruled and from the verdict and judgment pronounced thereon he prosecutes this appeal.

The motion for a new trial sets out seven alleged errors as grounds for a reversal, which are: (1) Error of the court in overruling defendant's demurrer to the indictment; (2) verdict is not sustained by sufficient evidence; (3) in substance the same as (2); (4) error of the

court in overruling defendant's motion for an acquittal instruction; (5) error of the court in giving instructions 1 and 2, the latter of which was the reasonable doubt instruction; (6) the admission of incompetent evidence, and (7) the rejection of competent evidence offered by defendant.

Before considering them we feel that the record justifies the statement that there is scarcely brought to this court a record of a convicted criminal more convincing of his guilt than is the instant one.

The victim of the appellant was Elmer Beckley, a resident of the city of Owensboro, within which appellant and his two proven confederates also resided. The larceny consisted in the extraction from Beckley's automobile, which was parked in front of a moving picture theater in that city, in the late afternoon or early night of December 23, 1944, some of its contents of more than $20.00 in value. Elmer Beckley and his wife, it appears, had either relatives or friends residing in the city of Evansville, Indiana and had placed in the automobile two heavily packed grips with other packages in boxes preparatory to spending the Christmas holiday, with their hosts in Evansville. Mrs. Beckley wanted something which she could purchase from a jeweler across the street, and the two entered that store leaving the automobile shut, but unlocked and without an occupant. Beckley immediately notified the police and word soon reached H. O. Whittinghill, a detective of the city, who with J. H. Heal, another detective, immediately went to the scene.

Shortly prior thereto Whittinghill testified that he saw appellant with his two confederates, W. D. Huskinson and his brother, Eldred Huskinson, on the streets together near the scene of the theft. Inquiry developed suspicions pointing to the guilt of the three accused, and a warrant was issued for the arrest of appellant (possibly also for his two confederates, but which fact is not disclosed in the record), which the witness served the next morning by arresting defendant at his home, which was with his sister and her husband. Upon entering that home to serve the warrant the officer observed setting in the hall a grip and some toys, and perhaps other articles of minor value, all of which corresponded to the description of the property taken from Beckley's au-

tomobile. Upon inquiry appellant stated that the grip, which was empty, was brought to him by one of his confederates as was also the toys and other minor articles, for safe keeping, except one of the toys was given to an infant in the household.

Eldred Huskinson lived on the same street as appellant, only two doors separating their homes. Upon receiving the information as to who delivered to appellant the property found in his home, the officers went with him to his nearby confederate, who also had some of the missing articles in his possession, and he, in the presence of appellant, stated to the officer that the other stolen articles were at the home of Eldred's brother, W. D. Huskinson, to which place the three journeyed and there found the remaining property, a part of which had been taken from the empty grip found in appellant's home, and the other part from the other grip that was not delivered to appellant. Appellant was then taken to police headquarters and there made a complete confession of his guilt in collaboration with his two confederates as perpetrators of the theft. When arraigned for examining trial he entered a plea of guilty. Both detectives testified to the confession of appellant and to which there was no objection. The only objections to any testimony given by the detectives was one to the question: "Did you find anything else there?" (Referring to appellant's residence.)

There was another objection to an answer made to the question propounded to him, which the court sustained and admonished the jury. A part of that answer was: "Then we learned that Huskinson and Harris were in the neighborhood of this ransacked car at the time of night this happened, and we had information somebody had seen them going up the street with a suitcase." The court overruled the objections to that part of witness' answer. No objection having been made to the testimony of two dectectives relating the confession of appellant, its incompetency, if any, was thereby waived.

Counsel argues in this court that the confession was obtained in violation of KRS 422.110, as amended by Chapter 141 of the Acts of 1942, the substance of which was to vest in the trial judge the exclusive authority to determine the validity or invalidity of the tendered

confession by determining whether or not it was wrongfully procured under provisions of the same section. The amendment provides that such determination shall be made "Independent of and without the hearing of the jury trying the case." If, however, the investigation was had in the presence of the jury, and it was clearly shown that the section had not been violated in obtaining the confession, and was, therefore, held to be competent, then no possible prejudice could result from its admission because what the witness stated (as the foundation of the court's ruling) was all that he stated on that subject—not repeating it after the court's hearing in the presence of the jury. On the contrary, if the court had heard the testimony concerning the relevancy and competency of the confession in the presence of the jury, and had then rejected the confession, the object and purpose of the statute would be glaringly violated and would no doubt constitute ground for reversal. The officers in this case had stated that appellant recounted to them his actions and movements on the particular day of the larceny, including the time it was committed, and in that statement he said, inter alia, that he and his confederates after the theft obtained some liquor and in consuming it dropped the bottle on a certain spot on a certain street, and broke it. The officers went to and inspected the spot and found the broken glass of the bottle appellant had referred to. Moreover, they, acting upon what the appellant had told them as to the whereabouts of the stolen property, went to that place and found that he had told them the truth as to its location and whereabouts.

In the comparatively recent case of McQueen v. Commonwealth, 196 Ky. 227, 244 S. W. 681, 685, where the question of the admissibility of extraneous statements—made by defendant in a criminal prosecution in the course of nonadmissible confession—developed by subsequent investigation to be true, were admissible, was involved. We therein held such extraneous statements to be competent, saying:

"If one in custody makes an involuntary confession, or one which is extorted from him by duress, the confession itself is not admissible in evidence against him; but if in making the confession he makes statements of extraneous facts by reason of which there is thereafter produced against him evidence so disclosed, it is held

to be competent if the thing in evidence is identified other than by the confession itself. As said in 16 C. J., p. 731, sec. 1506:

" 'If one accused of crime in making an involuntary confession makes statements of extraneous facts, and, in consequence of the information thus obtained from him, any material fact is discovered, it may be shown that the discovery was made conformably with such information.' "

The same question was likewise presented, and so determined, in the case of Baughman v. Commonwealth, 206 Ky. 441, 267 S. W. 231, wherein an involuntary confession was under consideration, and in that opinion we approved the ruling of the McQueen case.

Independently, however, of such rulings we have concluded from the evidence herein that the record furnishes no ground whatever for the contention that the confession of appellant was illegally obtained, if the question was properly before us by an objection to its introduction. Both of the officers who testified for the prosecution stated positively that no questioning, threats, duress or any other means were employed to obtain the confession, or to induce appellant to make it. His testimony concerning his confession, as well as to his whereabouts, acts and doings at the time of the theft—and immediately preceding and following it—is so vague and incredible as to justify the insertion of the material part of it in this opinion. He was asked by his counsel to tell the jury in his own way what he knew about the theft, and he gave this rambling and incredible answer:

"On the night, I don't know exactly what date, but it was before Christmas me and two Huskinson boys, we run around quite a bit together, and we come down in town and I had 75 or 80 cents and we was intending to go to the show, and come down in town and was coming from the Pepsicola Bottling Company and we stopped and looked at the pictures and I told the boys I thought I would go to the show, and W. D. said * * * And instead of going to the show I left the Huskinson boys in front of the Strand and I don't know where they went, and I went home and eat a bite of supper and stopped at Wilbur's and got a glass of beer and I fooled around in town awhile and went home around 10 or

10:30 and I went to bed, and the next morning when I got up I went over to Eldred's; he lived with his mother at 821 Breckenridge and I live at 817, and I went over there and talked to him and his mother, and Eldred said, 'We made a pretty good haul,' and I said, 'How is that?' and he said, 'We got some clothes and stuff down at W. D.'s,' and I stayed there awhile and he said, 'Let's walk around.' We first went out to Chautauqua Park and we didn't see nobody and nobody to talk to and went down to W. D.'s and he commenced showing me all the stuff in behind a little couch and I don't know what all he had; dresses and slips and hose and I don't know what all else, and I tried to buy a dress and he wouldn't sell it and I asked him where he got it and he said he got it on St. Ann Street. He said, 'Do you remember that Strand?' and I said 'Yes' and he said that is where he got it. And we got home before dinner. Nothing but drunks come there and his mother stays drunk all the time and he wanted to leave a suit case at home and my sister said yes, he could leave it there, and Eldred had a little yellow painted car and he give it to my little nephew, my brother-in-law's kid, and Mr. Heal and Mr. Whittinghill come out there and arrested me.''

Later in his testimony he testified that he had been convicted of a felony and served at least a part of the sentence, and that detective, and witness, Heal, "tried to make me say I broke in a place I didn't break into'' and that witness, Whittinghill, said to him, " 'I like you,' and I said, 'why don't you act like it?', and he threatened to whip me.'' He then denied making the confession testified to by the officers, but said that he did say to them that "I took the cooker but did not break in the car,'' the cooker appearing to be one of the articles contained in the car. It is thus perceived that no fact is stated which violated the method of obtaining the confession denounced in the statute, commonly known as our "sweating'' statute.

In another part of his testimony in telling what his confederate stated to him upon bringing the stolen articles to his home he was asked:

"Q. Did he (Eldred Huskinson) say anything about that suit case being stolen? A. No sir, he didn't say *for sure*.

"Q. Do you know where that car was parked?

(Meaning the one containing the stolen articles.) A. No sir, not exactly.'' (Our emphasis and parenthesis.)

We believe that we have discussed the testimony sufficiently to demonstrate the truth of the statement we have made in an earlier part of this opinion concerning the proof of the guilt of appellant, and which conclusion is fortified by the failure of appellant to introduce his sister—who he said knew about the delivery of the articles found by the officers in her home—to prove by whom and under what circumstances they were so delivered. Nor did he introduce either of his confederates —one of whom had been convicted and was serving his sentence—to prove that they alone, without any participation of appellant, committed the larceny of the stolen property from Beckley's automobile. So far as the record discloses one of those confederates, at whose house the major part of the stolen property was found, was then in Owensboro; but whether or not he had then been tried is not disclosed. The other one *had* been convicted and therefore could not be shielded from testifying on the ground that he might incriminate himself. Appellant was entitled by appropriate application to obtain the presence of that witness at the trial, or perhaps, he might have obtained his testimony by taking his deposition, or he might have filed his affidavit setting out what that witness would testify and to have it read at the trial as the witness' testimony. Neither of which did he do or attempt to do but depended entirely on his own uncorroborated testimony to establish his innocence. Such failures on the part of a litigant to obtain available testimony furnishes a strong inference that it would not support his contention as testified to by himself, and which was so declared by this court in the cases of Star Mills v. Bailey, 140 Ky. 194, 130 S. W. 1077, 140 Am. St. Rep. 370; McDonough v. McGowan, 165 Ky. 425, 177 S. W. 277; Rice v. Rice, 243 Ky. 837, 50 S. W. 2d 26, with other cited ones in those opinions.

It is argued, however, that the court failed to give to the jury the whole law of the case, by not giving an instruction on petit larceny which does not carry with it a felony punishment. This contention is bottomed upon the fact that there was a contrariety of proof as to the value of the stolen articles found in the home of appellant's brother-in-law with whom he was residing. There was evidence that the discovered articles at that place

were worth as much as $25, but there was also proof that, perhaps, they were not worth in the aggregate exceeding $18.75, and this argument would be appropriate and pertinent, were it not for the fact that the jury found the defendant guilty of the committed larceny of property valued at near $400. If he were guilty of the offense of stealing the property found in his possession, he must have been present and participated in the entire robbery and which would not entitle him to the lower punishment for the misdemeanor, and escape his participation in committing the entire robbery. Supporting the conclusions we have reached in this case upon some of the questions involved, and especially the one relating to appellant's confession, is the case of Bass v. Commonwealth, 296 Ky. 426, 177 S. W. 2d 386, 388, in which other prior ones are listed. In the course of that opinion, the court in disposing of the objection to the introduction of the confession said:

"Passing the question that there was no objection interposed to the introduction of the confession and no motion to exclude it after its introduction, it is clear that the court properly passed on this question himself rather than submit it to the jury. In view of the present statute, KRS 422.110, we are at a loss to understand the insistence with which this question is presented since the statute clearly vests this function in the trial judge. Prior to the enactment of Chapter 141 of the Acts of 1942, it was the function of the jury to determine, under appropriate instructions, the admissibility of a confession claimed by the accused to have been obtained in violation of the Anti-Sweating Act, but the purpose of the 1942 amendment was to abolish this practice and to vest this function in the trial judge. This identical question was decided in Herd v. Commonwealth, 294 Ky. 154, 171 S. W. 2d 32."

Finding no prejudicial error in the trial court the judgment is affirmed.