[Civ. No. 3791. Fourth Dist. Feb. 2, 1949.]

CHAN LAI YUNG GEE, Petitioner, v. THE SUPERIOR COURT OF KERN COUNTY et al., Respondents.

Borton, Petrini, Conron & Borton for Appellant and Petitioner.

S. B. Gill and Dorsey, Campbell & Bultman for Respondents.

BARNARD, P. J.—The plaintiff brought this action for annulment, alleging that he was a resident of Kern County; that he and the defendant were married on the island of Hong Kong, China, on November 20, 1947; that as a veteran of

World War II he was entitled to bring his foreign-born wife into the United States for permanent residence; that except for said marriage the defendant was not eligible for admission into the United States; that the defendant entered into said marriage and obtained his consent thereto by fraud in that she then secretly intended to use said marriage for the purpose of obtaining entry into this country, and not to thereafter live with the plaintiff; that upon arrival at the home of her parents in New Orleans she informed him that she had married him for this purpose and refused to live with him as husband and wife; that he was ignorant of her said secret intent; and that upon discovering the same he discontinued cohabiting with her.

An order for publication of summons was obtained on July 3, 1948, the plaintiff's affidavit stating, among other things, that he resides in Kern County, that the defendant resided there after the marriage and up to December 26, 1947, on which date she left California and now resides in the city of New Orleans, State of Louisiana, and that personal service of summons on her cannot be made in this state.

An affidavit of personal service of summons on the defendant in New Orleans was filed. A special appearance was made on behalf of the defendant for the purpose of moving to quash the summons and the service thereof. The motion was based on the grounds that the court had no jurisdiction over an action for the annulment of a marriage contracted outside of this state, and that our laws do not permit a party domiciled in this state to bring such an action and confer jurisdiction on the courts by substituted or constructive service upon a nonresident defendant. Affidavits were filed alleging that the defendant, since March, 1948, had been residing in Louisiana and has not been within the State of California; that personal service was not made on her; and that personal service was attempted by leaving a copy of the summons and complaint with an 11-year-old child in a laundry in New Orleans at a time when the defendant was ill in bed in a room upstairs. The court resolved the question of fact as to whether the papers had been personally served against the defendant, and entered an order denying the motion to quash, from which order she appealed.

A motion to dismiss this appeal was noticed. Thereafter, the defendant filed in this court a petition for a writ of prohibition restraining the trial court from proceeding further in the annulment action on the grounds that it had no jurisdiction

in this matter for the reason that the action was one for the annulment of a marriage celebrated in China, and for the further reason that the plaintiff in that action abandoned the petitioner in New Orleans on January 7, 1948; that she is and has been since that date a resident of New Orleans and has not been in the State of California; and that the court cannot obtain jurisdiction in such an action to annul a marriage celebrated elsewhere by substituted service of process by virtue of an order for publication of summons. By agreement of the parties the motion to dismiss the appeal in the annulment action and the application for a writ of prohibition were heard and submitted together. It was conceded at the hearing that the motion to dismiss the appeal should be granted on the ground that the order denying the motion to quash was not appealable. The only questions which remain are whether the courts of this state have jurisdiction in an action for annulment of a marriage celebrated elsewhere and, if so, whether constructive service may be had under our laws to give the court jurisdiction over a defendant who resides in another state. The argument, as presented, relates only to the second of these questions.

Considerable confusion appears in the various decisions and among the text writers, where this subject has been considered. In 128 American Law Reports, at page 61, it is stated that the courts are practically unanimous in holding that jurisdiction cannot be exercised on constructive service on a nonresident defendant in such an action. The cases there cited, with one exception, support that statement. In *Everly* v. *Baumil,* 209 S.C. 287 [39 S.E.2d 905], the Supreme Court of South Carolina points out that the overwhelming weight of authority is to the effect that the courts of the domicile of the parties have jurisdiction to annul a marriage celebrated elsewhere and, further, that it is generally held that the domicile of one of the parties within a state is sufficient to confer jurisdiction in an annulment case if the court acquires jurisdiction of the other party by voluntary appearance or personal service within the state. However, the same court held in *Pepper* v. *Shearer,* 48 S.C. 492 [26 S.E. 797], that service by publication on a nonresident defendant in such a case was ineffectual since the action was merely one in personam. In *Gayle* v. *Gayle,* 301 Ky. 821 [192 S.W.2d 821], a Kentucky case, the same view was adopted, the court attempting to distinguish between a divorce case and an annulment case, in this respect, by saying that in a divorce case the marriage status is a thing

or res upon which the court may act, while in an action for annulment on the ground the marriage ceremony was void the very allegations of the petition preclude the existence of the thing or res.

In the Restatement of Conflict of Laws, section 113, it is stated that a state can exercise jurisdiction (by divorce) to dissolve the marriage of spouses of whom one is domiciled in the state and the other is not, if the spouse who is not domiciled in the state has by her consent ceased to have the right to object to the acquisition by the other spouse of a separate home. It is then stated, in section 115, that a state can exercise jurisdiction to annul a marriage "under the same circumstances which would enable it to dissolve the marriage by divorce."

In an article in 18 California Law Review 105, good reasons are set forth in support of the view that a state has jurisdiction in an action to annul a marriage performed in another state where the parties are before the court. This is largely based on the general rule that jurisdiction depends upon domicile. The article, however, contains little or nothing on the question of substituted service. In another article, in 16 California Law Review 38, it is pointed out that in divorce cases the court has to do with a res, the marriage status, and that the judgment is to that extent in rem. Reference is made to the argument that a different situation exists in an annulment action because the purpose of the action is to determine that a marriage relation never existed, in which event there is no status of marriage to be dealt with and, consequently, no res. In reply to that argument it is pointed out that while marriage is one kind of status celibacy is another, and that an annulment action also deals with status and is as much an action in rem as is a divorce case. It is further pointed out that a similar problem would be involved if a party seeking annulment were required to return to the state where the marriage was celebrated since personal service on the adverse party usually could not be had there. The article supports the conclusion and inference that such an action may be heard in a state other than that in which the marriage occurred and that an annulment action, like a divorce action, is an action in rem insofar as it affects the status of the parties.

In a Washington case, *Piper* v. *Piper,* 46 Wash. 671 [91 P. 189], the sole question presented was whether the service of summons by publication was authorized in an action of this character by the statutes of that state. It was held that a

legislative intent to establish the same jurisdiction and practice for both divorce and annulment suits appears since in a number of instances the two forms of action were treated together in the same legislative acts, and since the Legislature had invariably treated the two forms of action as belonging to one general subject, and in conferring jurisdiction to grant divorces has included the annulment of marriages. A statute in that state expressly authorized service upon a nonresident defendant by publication in an action for divorce but such service in an action for annulment was not expressly mentioned. The court in its decision approved a statement from the American & English Encyclopedia of Law to the effect that an annulment suit, like one for divorce, is a proceeding to establish the status of the parties and that the law as to domicile is equally applicable in both cases.

In *McCormack* v. *McCormack,* 175 Cal. 292 [165 P. 930], a judgment of annulment entered in a court in the State of Washington was held to be entitled to full faith and credit in this state, the court presuming that the grounds upon which the court had acted in annulling the marriage were the same as those recognized in this state. The decision in this case seems to recognize the validity of constructive service in such an action if it sufficiently appears that the statutes of a state permit such service. In *Mayer* v. *Mayer,* 207 Cal. 685 [279 P. 783], the court suggested that there are cogent reasons why annulments should be sought in the courts of the state where the marriage took place. As pointed out in *Price* v. *Price,* 24 Cal.App.2d 462 [75 P.2d 655], this observation was dictum and, as has been recognized in a number of cases, sound reasons also appear why an annulment action should be permitted in a different state, where the parties reside. However, in the Mayer case the court stated a rule which is well established, as follows: ''By reason of the interest of the state and society in the preservation and integrity of the marriage relation, it has been declared that fraud which would afford grounds for rescinding an ordinary contract will not justify an annulment of marriage, and that the fraud necessary to avoid a marriage must be such as is deemed vital to the marriage relationship.'' This rule clearly recognizes that an annulment action directly affects the status of the parties, and is a matter of public interest and not one which is purely personal to the parties. In this respect it would seem that such an action is precisely similar, in its purpose and effect, to a divorce action. It has long been held in this state that a divorce action, insofar as it affects

the status of the parties or the custody of children, is a proceeding in rem and that service by publication, in such cases, is good. (*In re Newman,* 75 Cal. 213 [16 P. 887, 7 Am.St.Rep. 146], citing *Pennoyer* v. *Neff,* 95 U.S. 714 [24 L.Ed. 565].)

 While the point now raised has not been directly decided in this state, we think that both on reasoning and the better authorities it must be held that the courts of this state have jurisdiction in annulment cases where the marriage occurred in another jurisdiction if the plaintiff resides in this state when the action is brought. It would further seem that the question as to whether a judgment may be entered in such an action, based upon substituted or constructive service upon the defendant who resides in another state, must depend upon the laws of this state as expressed in its statutes and as interpreted and applied in its judicial decisions.

While our statutes do not directly answer the question presented, we think they must be interpreted as permitting such constructive service in annulment actions, although this is contrary to the rule followed in most of the other states, as disclosed by the decisions to which we have been referred or which we have found.

Title I, part III, division 1 of the Civil Code deals with marriage. Chapter I of that title deals with the contract of marriage. In article I of that chapter, dealing with the validity of marriage, it is provided that certain marriages are void from the beginning. In article III of that chapter, it is provided that either party to a void marriage may bring an action to have it so declared. Chapter II of that title is headed "Divorce." Article I provides that a marriage may be annulled for any one of six causes. With respect to most of these, including the ground of fraud, it is provided that the right to an annulment depends upon the subsequent action of the innocent party. In other words, in such cases the marriage is voidable rather than void. Other sections of that article provide when and by whom the action may be brought, protect the rights of children and make a judgment of annulment conclusive only as against the parties and those claiming under them. These provisions strongly imply that the status of marriage exists until judgment of annulment is entered, and the provisions for the protection of children and for a limited effect of the judgment imply a continued recognition of that status for certain purposes. Article II of that chapter deals with divorce. While some of the provisions applicable to a divorce are not made applicable to an annulment these are

not material to the question before us. In general, both forms of action are treated in the same chapter and no distinction is expressly made which is material here. Many questions of procedure are left to our general statutes and, unlike the Washington statutes, constructive service is not expressly provided for in divorce actions alone. No express provision, in this connection, is made in either case.

Turning to our general statutes, section 379 of the Code of Civil Procedure provides that any person may be made a defendant who claims any adverse interest in the controversy or who is a necessary party to a complete determination of the question involved. Section 412 of that code governs the conditions under which substituted or constructive service may be used. It is broad in its scope, governs all forms of action, and no reason appears in the statute itself why it should not apply as much in an annulment action as in a divorce case.

Admittedly, under other established principles, the constructive service thus provided for in this section cannot confer jurisdiction to enter a valid and effective judgment in an action which is purely in personam. Under equally well-settled rules a judgment based on such service is valid and effective in an action in rem, and to the extent that the judgment acts in rem and not merely in personam. It is well settled in this state that such substituted service is sufficient in divorce actions insofar as the judgment affects the marital status of the parties and the children, and to that extent the action and the judgment are in rem within the meaning of the rules governing the service of process and the acquiring of jurisdiction over the necessary parties.

There is nothing in our statutes which in this respect distinguishes in any way between an action for divorce and one for an annulment. In an action for annulment on the ground of fraud the marital status exists until judgment is entered, that status would continue to exist if judgment were not entered, the action is brought for the specific purpose of ending the status which then exists and which would otherwise continue to exist, it is for the purpose of changing an existing status into another status, the public interest is directly involved as are the rights of any children, and to this extent the action is not merely in personam but is one in rem, within the meaning of our established rules. In such an action, on the ground of fraud, the complaint discloses that a marriage was celebrated and still exists, and sets forth reasons for bringing it to an end which may, or may not, be sustained

and approved by the court. In this state, at least, such an action is not merely one to determine the personal rights and obligations of the parties under a civil contract. ■ The state has a rightful and legitimate concern with the marital status of the parties to the action, one of whom is domiciled in this state, and the fraud relied on to secure a termination of the existing status must be such fraud as directly affects the marriage relationship and not merely such fraud as would be sufficient to rescind an ordinary civil contract. (*Mayer* v. *Mayer*, 207 Cal. 685 [279 P. 783].) The action is one directly affecting the status of the parties and involving the existence of a res or thing. The res is exactly the same as that involved in an action for divorce, and the action and the judgment should be held to be in rem to the same extent, for the same reasons, and to the same end and purpose. ■ In our opinion, in the respect here in question, an annulment action cannot reasonably be distinguished from a divorce action and the same rules should apply in regard to the service of process for the purpose of acquiring jurisdiction to enter a valid judgment against a nonresident defendant, insofar as it affects and governs the marital status of the parties.

The motion to dismiss the appeal from the order refusing to quash the service of summons is granted, and that appeal is dismissed. The petition for a writ of prohibition is denied.

Griffin, J., and Mussell, J., concurred.