**Russell Stephen KARL, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 23, 1956.

Harry B. Miller, Jr., Lexington, for appellant.

J. D. Buckman, Jr., Atty. Gen., John B. Browning, Asst. Atty. Gen., for appellee.

MONTGOMERY, Judge.

The appellant, Russell Stephen Karl, was convicted of the crime of armed assault with intent to rob. KRS 433.150. He appeals from a judgment sentencing him to serve twenty-one years in the state penitentiary. It is contended that the trial court erred: (1) in ruling a written confession admissible in evidence; (2) in refusing to permit appellant to introduce evidence concerning the circumstances surrounding the making of the confession after admitting the confession in evidence; and (3) in admitting incompetent testimony.

On February 12, 1955, a liquor store in Lexington, Kentucky, was robbed of cash and checks. The clerk testified that three men entered the store about eleven o'clock at night. One of the men ordered a beer. As the clerk leaned over to get the beer, a gun was stuck in his back and he was told to open the safe, which he did. He was made to lie face down on the floor while money and checks were taken from the safe and cash register. The men were in the store a very short time and were out of his sight when the clerk got to his feet. He later was able to identify Russell Curry and Edward Duke as two of the participants in the robbery, but could not identify the appellant.

Curry, Duke, and the appellant were arrested in Florida and returned to Dayton, Ohio, where appellant signed a written statement, confessing his participation in the Kentucky holdup. He was then re-

turned to Lexington for trial. Upon a hearing in chambers, held pursuant to KRS 422.110(2), the trial court held the confession to be admissible, over the objection of appellant.

The witnesses at the hearing in chambers were Sgt. Charles Teeter, a Dayton police officer; appellant; his wife; and Sgt. Robert Duncan, a Lexington police officer. Teeter accompanied appellant on his return from Florida and took the statement.

The evidence at the hearing in chambers showed that appellant was arrested under a fugitive warrant issued by Ohio authorities, charging him with armed robbery. This charge was dismissed subsequent to his return to Ohio. He was arrested on February 20, 1955, in a motel in Holly Hill, Florida, in company with Curry and Duke, his brother-in-law.. The three men were held in jail in either Holly Hill or Daytona Beach, Florida, pending the arrival of police officers from Dayton, Ohio.

The confession was read by Sgt. Teeter at the hearing. It was in question and answer form. Sgt. Teeter and a detective witnessed the statement, in which appellant gave details of his participation with Curry and Duke in the Lexington robbery. The confession was concluded with answers by which appellant admitted the statement to be true and given of his own free will, without any mistreatment or promise of immunity and with knowledge of the consequences of his signing.

Teeter stated that the Dayton, Ohio, police officers arrived in Daytona Beach, Florida, on February 24. Another participant in some Dayton, Ohio, robberies had confessed, implicating Curry and Duke. Curry gave a statement on February 25, admitting his part in the Ohio and Lexington, Kentucky, robberies. This confession did not implicate appellant in the Ohio robberies. Duke signed this statement in Florida, and made a further statement in Dayton, Ohio, on March 3, 1955.

Appellant was first questioned about the robberies when taken from the Holly Hill jail to the Daytona Beach jail on February 27. Teeter said he questioned appellant about twenty minutes, but appellant stated it was about two hours. Extradition from Florida was waived by the appellant. The police officers, with the three prisoners, started the return trip to Ohio on February 28 or March 1, and arrived in Dayton late in the evening on March 2.

The return trip was made in a station wagon, with the prisoners seated together fastened by safety belts, to which each was handcuffed. Their movements were restricted, but by bending over, they were able to use their hands to smoke. Appellant complained of the quality and lack of accommodations at the various jails in which he was confined. He said he was unable to shave and bathe, the food was bad, and he had to sleep on the floors. From the time of his arrest, he was unable to communicate with his wife or counsel, despite his requests. His wife made calls, but was refused the right to talk to him.

Appellant stated that he was questioned during a ten or eleven hour period on the trip from Daytona Beach to Knoxville, Tennessee, where an overnight stop was made. From Knoxville to Dayton, he was asked continually when he was going to make a statement, and was told that the others had confessed and it would be easier on him if he did likewise. Sgt. Teeter said that the robberies were discussed freely on the return trip but he denied questioning appellant.

The morning after returning to Dayton, appellant made his written statement while at police headquarters. Teeter stated it took a short time to prepare it after he had explained appellant's rights to him. Appellant gave the following reason for making the statement:

"Because I just didn't want to say no all the time and be called a liar, and have more questions hammered at me, and go gack to that holdover, and I wanted to talk to my wife and get legal counsel to represent me. I was told they made a statement and I was to make the same one."

Appellant also stated that he read the other statements and said that he would sign the same thing but the police officers insisted that he must make his own statement, which was reworded and rephrased at the suggestion of Sgt. Teeter to bring it into accord with the other statements.

Appellant complained of being denied counsel and bail, but when brought before a municipal court judge in Dayton, he signed a waiver of extradition for his return to Kentucky without making any request for counsel or bail. Duncan said he was present at the examining trial of appellant in the Lexington police court. He said appellant there admitted signing the statement and its truth. Appellant denied the truth of the confession, and was not represented by counsel at the examining trial.

Upon this proof, the trial judge admitted the statement in evidence. No contention is made that the confession was induced by threats, fear, or hope of reward.

The so-called "Anti-Sweating Act", KRS 422.110, was enacted in its present form in 1942. For convenience, it is quoted:

"(1) No peace officer, or other person having lawful custody of any person charged with crime, shall attempt to obtain information from the accused concerning his connection with or knowledge of crime by plying him with questions, or extort information to be used against him on his trial by threats or other wrongful means, nor shall the person having custody of the accused permit any other person to do so.

"(2) A confession obtained by methods prohibited by subsection (1) is not admissible as evidence of guilt in any court. The trial judge shall determine the competency and admissibility of any alleged confession under the provisions of this section from evidence heard by him, independent of and without the hearing of the jury trying the case."

The constitutionality of the present statute has been upheld. Bass v. Commonwealth, 296 Ky. 426, 177 S.W.2d 386. It was there held that the practice of submitting the question of the admissibility and competency of the confession to the trial judge for a decision in chambers did not violate Kentucky Constitution Section 7, preserving the ancient mode of trial by jury. Under the present statute, no error is committed in failing to submit the question of admissibility of the confession to the jury. Bass v. Commonwealth, supra; Logan v. Commonwealth, 308 Ky. 259, 214 S.W.2d 279.

Passing for the present a discussion of the first ground urged for reversal, we are asked to determine whether proof of the circumstances under which the confession was obtained is admissible on the trial in order for the jury to determine the credibility of the confession and witnesses concerning it and the true facts of the issue involved. The question is presented to this Court for the first time.

The present statute places the duty of determining "the competency and admissibility of any alleged confession" upon the trial judge "from evidence heard by him" in chambers. It should be noted that the statute says nothing about credibility of the witnesses or statement. The problem may be stated thusly: After the trial judge permits a confession to be introduced in evidence, should the jury be allowed to consider the circumstances under which the confession was made? At this point, the competency and admissibility have been decided. The purpose of introducing this type of proof is to enable the jury to determine the credibility of the statement and the true facts with reference to the triable issue.

In determining the purpose of the "Anti-Sweating Act", it is well to consider the statute in force prior to 1942. The previous statute was enacted in 1912 as Section 1649b, Carroll's Kentucky Statutes, and was substantially the same as our present statute so far as we are presently concerned, except "sweating" was defined, a

penalty was provided for its violation, and there was no provision for the trial judge to determine the competency and admissibility of any alleged confession, as provided in subsection (2) of the present statute.

The former statute recognized a need to protect the rights of the accused, and the purpose was stated in Powell v. Commonwealth, 1939, 276 Ky. 234, 123 S.W.2d 279, 283 to be:

"Our Anti-sweating Act, as well as those of other jurisdictions, are intended to exclude and make incompetent confessions obtained by officers or, perhaps, others in authority through the application or exercise of most highly improper means or methods, amounting to duress or putting in fear, or the offering of inducements or temptations or otherwise, causing the confessor to make them from motives other than by his own voluntary will. Such statutes were never intended to exclude any and all confessions made to officers; but only such as were obtained through the means denounced by the statutes."

Under the older statute, conflicting evidence on the voluntary nature of a confession presented a question of fact for the jury, and it was the duty of the trial court to submit the question under an instruction that the confession should be disregarded if the jury believed it to be an involuntary statement. Bennett v. Commonwealth, 1928, 226 Ky. 529, 11 S.W.2d 437; Commonwealth v. McIntosh, 1935, 257 Ky. 465, 78 S.W.2d 320; Crawford v. Commonwealth, 1936, 264 Ky. 498, 95 S.W. 2d 12; Burnam v. Commonwealth, 1942, 289 Ky. 312, 158 S.W.2d 131. Undoubtedly, the instruction failed frequently to serve its purpose. The prejudicial effect of the confession when initially introduced could not be dissipated by the later introduction of evidence that it was improperly obtained.

So far as the present case is concerned, the only material change in the 1942 statute was the added provision that the competency and admissibility of the confession should be determined by the trial judge upon evidence heard in chambers. This change is in harmony with the purpose of the statute, as expressed in Powell v. Commonwealth, quoted above. The amendment was enacted in recognition of the prejudicial effect obtained by admitting the confession and leaving it to the jury to say whether it was voluntary or not. Little imagination is required to envision the unconscious effect of a confession on the jury's verdict, although the jury may have determined the confession to have been involuntary under a proper instruction.

The purpose of the 1942 statute was "to abolish the theretofore existing practice of submitting to the jury the question of whether or not a confession had been coerced." Herd v. Commonwealth, 1943, 294 Ky. 154, 171 S.W.2d 32, 33. The Herd opinion did not clarify whether the statute intended to abolish the submission to the jury of both questions, that is, admissibility and credibility, or admissibility alone. In Bass v. Commonwealth, 1944, 296 Ky. 426, 177 S.W.2d 386, 388, the same purpose was stated, and the error was recognized thus:

"The orthodox policy was for the judge to decide the issue as to the voluntariness of a confession and, according to Wigmore, it was an error of policy for several reasons to permit the jury to determine the admissibility of evidence merely because the admissibility depended on a question of fact."

Other references in the same case indicating that only the admissibility of the confession was concerned are:

" * * * voluntary nature of a confession and its admissibility in evidence * * * where there was an issue as to the voluntariness of a confession the question of fact should be submitted to the jury".

In Harris v. Commonwealth, 1946, 301 Ky. 818, 193 S.W.2d 466, 468, the Court said:

" * * * if the court had heard the testimony concerning the relevancy and

competency of the confession in the presence of the jury, and had then rejected the confession, the object and purpose of the statute would be glaringly violated and would no doubt constiute ground for reversal."

In the Harris case, the Court, for the first time, treated the statute as an additional safeguard for the defendant, with the primary purpose of keeping from the jury a confession which ultimately is shown to have been coerced. This view of the statute has prevailed to the present time. The Court has stated the purpose of the Act to be the exclusion of confessions obtained by "wrongful means", or through "'the exercise of highly improper methods, amounting to duress or putting in fear,'" or through "'sweating' or induced by hope or fear raised by promises or threats of one having authority over the accused at the time." Curtis v. Commonwealth, 1950, 312 Ky. 205, 226 S.W.2d 753, 754; Milam v. Commonwealth, Ky., 1955, 275 S.W. 2d 921, 923; and Brown v. Commonwealth, Ky.1955, 275 S.W.2d 928.

The foregoing opinions seem to consider the 1942 statute as a remedy intended to cure the evil arising from permitting the jury to hear the evidence on admissibility of the confession. Under this view, the purpose of the statute is fulfilled when the trial judge rules on the question of admissibility. If the confession is held inadmissible, the accused has been protected since the jury has not heard the prejudicial evidence of an involuntary statement. If the statement is held competent and admissible, the statute will have fulfilled its purpose; that is, to protect the accused against introduction of a statement involunarily obtained. The statute would have no further function or application. The confession, having been held competent and admissible, should then be introduced into evidence as any other statement, whether written or oral, and placed on the same basis as any other character of evidence insofar as its credibility is concerned. The defendant may then present to the jury evidence, in the nature of rebuttal, as to the conditions under which it was obtained, that he did not make the confession, or tending to contradict, discredit, or lessen the weight thereof. Either party then has a right to produce before the jury the same evidence which was submitted to the court when the court was called upon to decide the question of competency and admissibility and all other facts and circumstances relevant to the confession or affecting its weight or credit as evidence. This rule is in accord with the weight of authority. 20 Am.Jur., Evidence, Section 538, page 457; 22 C.J.S., Criminal Law, § 834, page 1458; Wigmore on Evidence (3rd Ed.), Volume 3, Section 861, pages 348-9. See Annotations, 170 A.L.R. 567. See also State v. Crank, 105 Utah 332, 142 P.2d 178, 170 A.L.R. 542.

In the present case, the appellant offered to introduce on the trial the same evidence introduced by him at the preliminary hearing concerning the voluntariness of the confession. The trial court erroneously sustained an objection to this evidence. For this reason, the judgment must be reversed.

Upon a new trial, if the admissibility of the confession is questioned and the evidence as to its voluntariness is the same, or substantially so, as on this trial, it should be admitted. In Commonwealth v. Mayhew, 1944, 297 Ky. 172, 178 S.W. 2d 928, it was held that no confession was admissible if a reasonable doubt as to its voluntariness existed. This rule seems to have been followed in Hager v. Commonwealth, 1945, 300 Ky. 585, 189 S.W.2d 867, but was ignored in Bass v. Commonwealth, 1944, 296 Ky. 426, 177 S.W.2d 386. In later cases, the more relaxed rule of the Bass case has been followed. Logan v. Commonwealth, 1948, 308 Ky. 259, 214 S.W.2d 279; Devine v. Commonwealth, Ky.1953, 258 S.W.2d 717. In Tarrence v. Commonwealth, Ky.1953, 265 S.W.2d 52, 56, it was said: "* * * where the decision [as to admissibility] rests on an issue of fact, it will not be disturbed unless it satisfactorily appears that the evidence

supporting the decision was insufficient. * * * " The evidence in the present case was sufficient to support the decision of the trial judge that the statement was voluntary.

 We find no merit in the third ground urged for reversal since it was based on the introduction of certain checks alleged to have been taken from the liquor store. No objection was made at the trial to the introduction of this evidence; therefore, the objection comes too late on appeal.

Judgment is reversed and a new trial is directed.

CAMMACK, MOREMEN and STEWART, JJ., dissenting.