FORTY-EIGHTH ANNUAL REPORTS, 1896.  527

State ex rel., Garvey, O'Brien and Kelley vs. Whitaker et al.

---

No. 12,067.

STATE EX REL. JOHN GARVEY, JAMES O'BRIEN AND THOMAS KELLY

vs. E. S. WHITAKER, RECORDER, EL ALS.

The record of respondent's court disclosing that relators had been committed to the parish prison for a period of two thousand one hundred and sixty days, in default of their making payment of fines aggregating seven hundred and twenty dollars in amount for each and costs of prosecution, for violation of a city ordinance in committing a trespass upon one of the public parks of the city of New Orleans; and it further appearing therefrom that, upon, essentially, one complaint, the respondent has found them guilty of seventy-two distinct violations of one ordinance within one hour and forty minutes, each one of said offences succeeding the other, only one and one-half minutes intervening between the commencement of any two of them. *Held:* That such a penalty is an unusual and unreasonable punishment in the sense of the Constitution.

State ex rel., Garvey, O'Brien and Kelley vs. Whitaker et al.

O N APPLICATION for Writs of *Habeas Corpus*, *Certiorari* and Prohibition.

*John Q. Flynn* for Petitioners.

Submitted on briefs January 11, 1896.
Opinion handed down February 24, 1896.

The opinion of the court was delivered by

WATKINS, J. Relators represent that on the 29th of November, 1895, they were tried before the respondent, Judge of the First Recorder's Court for the Parish of Orleans, on the charge of having violated City Ordinance No. 11,019 by destroying plants, etc., in one of the public squares. That after hearing evidence in said case the respondent found them guilty and sentenced them " on seventy-two different counts to pay a fine of ten dollars, or in default of payment of said fine to imprisonment in the parish prison for a period of thirty days on each and every count, making a total fine inflicted on each and every one of relators of seven hundred and twenty dollars, or in default of payment of said fine imprisonment in the parish prison for a period of two thousand one hundred and sixty days; nearly six years."

That all the evidence elicited was such as had been adduced on the trial of the first affidavit. That at the same time and on the same evidence, which was taken down in short-hand at the said trial and constitutes a part of the record, the respondent committed your relators to the Criminal Court on a single charge which was subsequently disposed of, etc.

Relator further avers, " that the offence charged was continuous and could not from its very nature have been divided into a number of offences.

" That the evidence on the trial of the cause did not warrant the separation and division of the charge in the manner and form adjudged by the respondent. That the commitments charge your relators with having committed these different offences, seventy-two in number, at an interval of one and one-half minutes between each and every offence. That the evidence did not, and does not, show

any such condition of things, and said specific demarcations of time and division and subdivisions. of the charge were the result of illegal, arbitrary and unjust action of the (respondent) judge, unwarranted either in law or by the facts of the case," as shown by the evidence at the trial.

Relators aver that there is no appeal from the respondent's decree, and they can only obtain relief by invoking the supervisory powers of this court. That they have been deprived of their liberty without due process of law. "That the fines inflicted are excessive and the punishment cruel and unusual, and beyond the power and authority of a court of limited jurisdiction," such as that of the respondent; and that same are violative of the provisions of Arts. six (6) and nine (9) of the Constitution of the State.

That no city ordinance authorizes the imposition of a greater penalty for a violation thereof than a fine of twenty-five dollars, nor imprisonment in the parish jail for a greater length of time than thirty days; and that the respondent could not pronounce sentence under any municipal ordinance a greater penalty against the relators than the law allows.

Relators further aver that they were unrepresented in respondent's court, but that they made due and timely protest against his arbitrary and unprecedented proceedings; and their prayer is for relief by means of *certiorari* and *habeas corpus*. And finally that, upon due examination, the judgment of the respondent be pronounced nu·l and void, and they be discharged and set at liberty.

The respondent has made no return, and we are, consequently, not advised of his views on the questions relators have propounded to us for our consideration and decision.

The record shows that on the 29th of November, 1895, the respondent issued a *mittimus* to the chief of police of the city of New Orleans, and to the sheriff of the parish of Orleans, commanding him to convey the relator, Tom Kelly, to the parish prison, there to be kept and detained until he shall pay a fine of ten dollars, or until he shall have been imprisoned for thirty days.

That *mittimus* is based on a judgmert of the respondent finding Tom Kelly guilty of having violated Ordinance No. 11,019, on the 8th of. November, about 10:20 o'clock P. M., on Annunciation, between Race and Orange streets.

On the same date another and precisely similar *mittimus* was
34

issued by the respondent commanding the incarceration of Tom Kelly in the parish prison on the same conditions—the only difference between it and its predecessor being that the time of the violation is stated to have occurred at " about 10:21½ o'clock P. M.;" just one and one-half minutes later than the former.

Another *mittimus* of precisely the same tenor was issued on the same date, placing the hour of the alleged violation at " about 10:23 o'clock P. M.;" just one minute and one-half later than the one previous.

And upon the same date the respondent issued sixty-nine additional *mittimuses* of exactly similar import as those just described, each one of which only differing from its immediate predecessor one and one-half minutes in respect to the time of the violation of said city ordinance; so that the last one of the total of the seventy-two offences was alleged to have been committed at " about 12:7 o'clock A. M." on the 9th of November, 1895—all the said offences having been committed between 10:20 P. M. and 12:7 A. M., within one hour and forty minutes consecutively.

Against the other two relators, Joseph O'Brien and John Garvey, respectively, the respondent issued seventy-two exactly similar *mittimuses*, commanding their imprisonment in the parish prison under exactly similar conditions as those above described.

It is thus conclusively established by the record that the three relators were found guilty by the respondent of seventy-two distinct violations of one city ordinance within the brief space of one hour and forty-seven minutes, each offence having been committed only one and one-half minutes subsequent to its predecessor; and, under one single judgment, each one of the relators has been adjudged and condemned to pay the aggregate amount of seven hundred and twenty dollars in fines, and to suffer alternate imprisonment of two thousand one hundred and sixty consecutive days.

The mandate of the organic law is that " excessive fines shall not be imposed, nor cruel and unusual punishments inflicted." Const., Art. 9.

The foregoing is an exact reproduction of the eighth amendment to the Constitution of the United States, and relators invoke the protection of that constitutional provision.

In State *ex rel.* Schoenhausen vs. Judge, 47 An. 701, a very similar question arose, involving the legality of the respondent's decree

sentencing the relator to sundry penalties of fine and imprisonment for a number of consecutive contempts of an order of his court.

The opinion states that "at one and the same time" eight rules were taken to punish for contempt, each rule assigning the violation of the injunction on a particular night of the period of the opening. Each rule was made absolute, imposing a penalty of ten days' imprisonment, so that beginning with the first ten days the remaining terms of imprisonment were to be inflicted until the petitioner had been confined eighty days.

"The application raises the question whether it was competent for the lower court to sentence the petitioner on those eight rules, the sentences all pronounced|at the same time, to eighty days' imprisonment."

And in passing on that question the opinion says: "When the power of the court is invoked to punish for contempt for conducting a saloon contrary to the laws and the injuction of the court, the court is called upon to inflict the appropriate penalty, not to exceed the maximum of ten days. If it is competent to divide the offence of conducting a saloon in disregard of the law into parts corresponding with the number of nights the saloon has been opened, and thus authorize eight sentences of ten days each, pronounced at the same time, on eight different rules, there would be no potency in the law fixing the maximum penalty for contempt at ten days' imprisonment.   C. P. 131.

"The same theory of dividing the offence into parts might be extended to the hours of the days of the opening, treating each hour as a distinct offence, and thus sanction an indefinite and prolonged imprisonment, notwithstanding the limitation of ten days in the Code."

In our opinion we held that that was a proper case to grant relief; and we annulled the order of imprisonment beyond the first period of ten days and discharged the relator, who had already endured the full time of ten days' imprisonment under the respondent's order of contempt.

A somewhat parallel case is found in the Supreme Court reports, entitled O'Neil vs. Vermont, 144 U. S. 323.

A complaint having been made before a justice of the peace against the plaintiff in error, for a violation of a Vermont statute against selling or giving away spirituous or malt liquors, by the terms of which "every distinct act of selling," etc., was declared to be

a separate and distinct offence which was made punishable by fine, the justice, upon the proofs presented, entered up judgment against him for four hundred and fifty-seven offences, and decreed him to pay the sum of nine thousand one hundred and forty dollars in fines, and four hundred and seventy-two dollars and ninety-six cents in costs of prosecution, and to be confined at hard labor in the house of correction for the term of one month; and, " that in case such fines and costs should not be paid on or before the expiration of said term of one month's imprisonment, he should be confined at hard labor in the house of correction for the further term of twenty-eight thousand eight hundred and thirty-six days, to be computed from the expiration of said term of one month's imprisonment."

The judgment of the county court affirmed the judgment which was rendered by the justice of the peace, slightly reducing the figures; and its judgment was affirmed by the State Supreme Court.

Complaint was made in that court that the punishment was " cruel and unusual " within the sense of the Constitution of the State of Vermont; but that court held that if the plaintiff in error had been " subjected to a severe penalty, it was simply because he has committed a great many such offences.     *     *     *

" The mere fact that cumulative punishments may be imposed for distinct offences in the same presecution is not material upon that question.    If the penalty were unreasonably severe for a *single* offence, the constitutional question might be urged; but here the unreasonableness is only in the number of offences which the respondent has committed."

In the Supreme Court of the United States a majority of the justices were of opinion that no Federal question was involved, and consequently the court was without jurisdiction, the provision of the eighth amendment to the United States Constitution only having reference to the courts of the United States; but four of the justices dissented, and Mr. Justice Field, speaking for the others, said:

" The accusation describes only a single offence; yet by the addition of the words ' at divers times,' that document is held to justify a trial and uphold a conviction for three hundred and seven distinct offences, only one of which is set forth in the accusation     *     *     *
all the others being brought within it by the use of those words.

" The punishment was one exceeding in severity, considering the offences of which the defendant was convicted, anything which I

have been able to find in the records of our courts for the present century."

It is evident that the Supreme Court of Vermont would have been of the same opinion as the dissenting justices of the United States Supreme Court were had they entertained the same opinion that three hundred and seven distinct offences had been cumulatively charged against the complainant in substantially one accusation.

But in any event that decision serves to forcibly illustrate the unusualness and severity of the punishment the respondent has inflicted upon the relators in the proceedings complained of.

But we are of the opinion that considering the offence to have been a continuing one, as in the case stated by the Vermont court, the severity and unusualness of the punishment which was inflicted upon relators is even more apparent than in the case of Schoenhausen or O'Neil, because the respondent found the relators guilty of seventy-two offences within the space of one hour and forty minutes, each offence embracing only one and one-half minutes and one offence following after the other immediately and consecutively.

If this theory of punishment by the respondent be affirmed as legal it would be equivalent to recognizing his power to sentence an individual to an indefinite period of imprisonment in default of paying exorbitant or numerous fines for the simple infraction of a city ordinance.

We think it manifest that relators are entitled to relief under the writ of *certiorari*, they having suffered imprisonment since the 29th of November, 1895.

It is therefore ordered and decreed that the sentence to pay a fine in excess of twenty-five dollars and to suffer alternative imprisonment in excess of thirty days was illegal and void and violative of the provisions of Art. 8 of the Constitution of the State; and it is further ordered and decreed that the relators be discharged from custody, and that the respondent be taxed with costs.