## Crutchfield et al. v. Commonwealth.

(Decided April 25, 1933.)

BEVERLY B. WADDILL for appellants.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES— Affirming.

The appellants, Garner Crutchfield, Luther Minor, and Rufus Taylor, three negro youths, were jointly indicted for the crime of assault with intent to rob as defined by section 1160 of the Kentucky Statutes. Upon their trial they were convicted and the punishment of

each was fixed at confinement in the penitentiary for a term of twelve years.

On this appeal they seek a reversal of the judgment on the following grounds: (1) The verdict is not sustained by the evidence; (2) the court erred in the admission of evidence; and (3) the statute under which they were tried and convicted is unconstitutional.

The indictment charged Crutchfield and Minor as principals and Taylor as aider and abettor. The crime was committed at about 9:30 o'clock on a Saturday night in January, 1933. Laurel Wyatt, a merchant of Madisonville, after closing his store and purchasing some groceries, drove to his home in an automobile accompanied by his wife and twelve year old daughter. His home is on the south side of Broadway about 50 feet from the intersection of Broadway and Spring Lake streets. There is one lot between Wyatt's lot and Spring Lake street. He drove the automobile into his garage which is located on the rear of his lot, turned off the lights, and was in the act of setting the groceries on the ground just outside of the garage when he was struck on the head three times. He was stunned but recovered sufficiently to identify Minor as one of his assailants. Mrs. Wyatt saw two negro men attacking her husband but was unable to recognize them in the darkness. After striking Wyatt, one of the men drew a pistol, placed it against his chest, and ran his hand in Wyatt's overcoat pocket. Mrs. Wyatt and her daughter began screaming and the men ran, going across the rear of the adjoining lot towards Spring Lake street. Mr. and Mrs. Wyatt started across Broadway street to the home of a neighbor, and before they reached the neighbor's home they heard an automobile start on Spring Lake street and shortly thereafter they heard a crash. It developed that an automobile had run into the rear of a truck which was parked on the north side of Broadway about 100 feet west of the intersection of Broadway and Spring Lake streets. Several persons living in the neighborhood heard the crash and went to the scene of the accident immediately. They found that a Plymouth automobile had run into the rear of a truck, Taylor was standing just back of the automobile, and Minor was pinned in the wrecked car. Both were injured. Police officers soon arrived and arrested Minor and Taylor and later arrested Crutchfield, who ap-

706

peared on the scene and admitted that he had been in the wreck. He also had been injured. He claimed that he had been rendered unconscious and that when he regained consciousness he was two or three squares away.

Three witnesses testified that the tracks made by the automobile in which appellants were riding were plainly discernible on the street and that they followed them and found that the automobile had turned out of Spring Lake street into Broadway and had been parked on Spring Lake street at a point nearly opposite Wyatt's garage. The Plymouth automobile belonged to Dr. E. G. Lester, a colored physician who lived two or three squares from the place of the accident. He testified that Taylor had asked permission to use his car for a few minutes earlier in the evening but that he had refused to let him have it. He learned shortly afterward, however, that the car was gone and soon learned of the accident. Taylor testified that he borrowed the car from Dr. Lester to drive to his home and that on the way he picked up Crutchfield and Minor, and while they were driving rapidly west on Broadway the accident occurred, and that he had not been on Spring Lake street.

Lonnie Jones testified that he was in the Hopkins county jail while appellants were there and that he heard a conversation between them in which Minor asked Crutchfield why he left when they had the wreck, and Crutchfield said he went home to wash his face and put on a clean shirt. Minor then asked him what he did with the gun, and he said he put it under the doorstep. No pistol was found on any of the appellants when they were arrested.

The evidence was amply sufficient to warrant the jury in finding the appellants guilty. Wyatt was acquainted with all of them, and he identified Minor as one of his assailants. Immediately after the attempted robbery an automobile was heard to start in Spring Lake street, and shortly thereafter the wreck occurred on Broadway about 200 feet away. The appellants were in the wrecked car and there was evidence that this car had turned out of Spring Lake street. The Wyatts and other witnesses for the commonwealth testified that no other car passed along Broadway about the time of the accident, but several witnesses introduced by the appellants testified that they saw a car

shortly before they heard the crash pass west along Broadway and that they had seen this car east of Spring Lake street; but none of them was able to state that this was the car that ran into the truck.

It is next insisted that the court erred in admitting incompetent evidence. Glenn Coffman, driver of the wrecked truck, testified that when he arrived at the scene of the accident he recognized the Plymouth automobile and knew it was owned by Dr. Lester. He stated that one reason for holding Taylor and Minor until the officers arrived was the probability that the car had been stolen. Dr. Lester testified that Taylor asked permission to use the car shortly before the attempted robbery and accident, but that he refused to let him use it. This testimony of Coffman and Dr. Lester was objected to on the ground that it was irrelevant and tended to prove an independent crime. Taylor testified that he borrowed the automobile from Dr. Lester. The taking of the car without the owner's consent immediately before the commission of the crime was a fact from which the jury might infer that this act was part of the plan to commit the particular crime of which appellants were charged and to enable them to escape and, therefore, was competent.

Ordinarily the commonwealth is not permitted to introduce evidence showing that the accused had committed other crimes than the one for which he is being tried, but there are certain well-defined exceptions to this general rule. The general rule and the exceptions thereto have been stated in numerous prior opinions of this court, and that statement need not be repeated further than to say that among the well recognized exceptions to the general rule is the admissibility of proof of another crime which tends to show intent, or that such other offense was perpetrated to conceal, or enable the accused to commit, the crime charged. Canada v. Commonwealth, 242 Ky. 71, 45 S. W. (2d) 834; Sneed v. Commonwealth, 236 Ky. 838, 34 S. W. (2d) 724; Kirby v. Commonwealth, 206 Ky. 535, 267 S. W. 1094; Blackerby v. Commonwealth, 200 Ky. 832, 255 S. W. 824; McQueen v. Commonwealth, 196 Ky. 227, 244 S. W. 681; Bullington v. Commonwealth, 193 Ky. 529, 236 S. W. 961; Brashear v. Commonwealth, 178 Ky. 492, 199 S. W. 21.

Appellants' contention that section 1160 of the statutes is unconstitutional is bottomed on the theory

708

that the punishment fixed is unreasonable and excessive. Section 17 of our Constitution provides that excessive fines shall not be imposed nor cruel punishment inflicted. Section 1159 of the Kentucky Statutes fixes the punishment for robbery at confinement in the penitentiary for not less than two nor more than ten years, while section 1160 fixes the punishment for assault with intent to rob at confinement in the penitentiary for not less than five nor more than twenty years, and it is argued that if confinement in the penitentiary for not less than two nor more than ten years is reasonable punishment for the completed act, confinement for not less than five nor more than twenty years in the penitentiary for an attempt is excessive and cruel within the meaning of section 17 of our Constitution. It will be noted, however, that section 1160 applies where an assault has been made with an offensive weapon with an intent to rob, or where money or other property has been demanded in or by any forcible and violent manner with like intent. It is only where the personal safety of the victim has been endangered that section 1160 applies. The crime denounced by section 1160 may be a more heinous one than the one denounced by section 1159 because of the means employed to commit it, and the Legislature has the constitutional right and it is its duty to enact a law that will tend to prevent the commission of such crimes. The Legislature is the judge of the adequacy of the penalties necessary to prevent crime, and unless it clearly and manifestly appears that the punishment fixed by that body is cruel and unconstitutional the courts will not interfere. The statute in question does not violate the constitutional prohibition against excessive and cruel punishments.

The judgment is affirmed.