# Parsons v. Commonwealth.

June 18, 1940.

C. B. Wheeler for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellant, Tom Parsons, also called Tom Akers, has been sentenced to imprisonment for five years on conviction of violating Section 1221 of the Statutes, which is as follows:

"If any person or persons shall arrest or imprison another, or shall transport him, against his will, beyond the bounds of this Commonwealth, otherwise than according to law, or cause, or in any manner counsel, aid or abet in such arrest, imprisonment, or transportation, the person or persons so offending shall, on conviction thereof, be deemed guilty of felony, and shall be confined in the penitentiary not less than one nor more than twenty years."

The appellant was jointly indicted with Dewey Salisbury. The crime is charged to have been committed pursuant to a conspiracy and also by each of the accused persons as principal or aider and abettor, one of the other. The appellant and Salisbury were deputy sheriffs of Floyd County. Salisbury is dead.

On the afternoon or early evening of December 31, 1938, Margaret Elliott, sixteen years old, and others were on their way to visit her grandfather. At a place called Banner in Floyd County other young people had been stopped on the side of the road and they flagged them down and asked the occupants to go and tell their parents they had been arrested. As Miss Elliott and her companion started to drive on Parsons, Dewey Salisbury and Jake Salisbury stopped them. Parsons and Dewey Salisbury searched the persons of the young ladies and men, as well as their automobile. When Belford Reitz objected to the officers searching his wife's person, Salisbury drew his pistol and commanded that he and Isom walk up the road. As they started off Salisbury struck Isom in the back of the head, producing a considerable wound. It is admitted nothing was found on the persons of these young people or in their auto-

mobiles in the way of intoxicating liquor or other contraband; that none of them were intoxicated and none had committed any other offense in the presence of the officers. Miss Elliott was taken to jail by Parsons in his car, driven by his wife. He reported to the jailer that he did not know what she was charged with and he would have to wait until Salisbury came for that information. The young lady was kept in jail all night although about midnight her father came and tried to get her released. The details, which we here omit, aggravate the conduct.

The defendant, like a more famous culprit who undertook to wash his hands of responsibility, says that he was but the innocent instrument of Dewey Salisbury and other officers. He repeated many times that his wife was driving his car and implies that he was an innocent passenger. Thus he follows another famous precedent. In contradiction of many witnesses, the defendant claimed that he was not present when the young lady and her party were arrested; that he and his wife drove up and stopped a hundred feet or more away from where the crowd was; and that he did not get out of his car, although his fellow-officers were busy with two car loads of prisoners. At the personal request of Miss Elliott, whom he and his wife knew, he permitted her and Isom to ride in his car and voluntarily go to and wait at the jail until Salisbury came.

The only intimation of an excuse or purpose for this outrageous, criminal conduct of these men is the implication contained in a remark one of them made in referring to one of the young people: "That is Bill Reynolds' girl; he will pay off like a slot machine." The two officers, Dewey Salisbury and Jake Salisbury, were drinking or drunk.

The claim that the defendant was entitled to a peremptory instruction of acquittal is without merit. It is argued that the verdict is excessive and the judgment should be reversed on that account. The court is not authorized to set aside a verdict in a criminal case because deemed excessive if the penalty is within the terms of punishment provided by the statute. Colvin v. Commonwealth, 247 Ky. 480, 57 S. W. (2d) 487; Crutchfield v. Commonwealth, 248 Ky. 704, 59 S. W. (2d) 983; Fry v. Commonwealth, 259 Ky. 337, 82 S. W. (2d) 431. It

may not be altogether amiss to add, however, that we do not regard the verdict as excessive. There can be no toleration of officers of the law abusing the power entrusted to them by deliberately and wrongfully arresting and mistreating innocent citizens in this free land of ours. Such conduct brings the law into disrepute, the office into disrespect, and encourages violent resistance by the subversive elements of society to authority when exercised lawfully. The jury believed beyond a reasonable doubt that the defendant was guilty of the nefarious conduct charged against him, namely, that he had trampled the law under his feet and wantonly disregarded the constitutional and inalienable rights of this young girl, to her humiliation and shame. The penalty is not too severe.

The major argument for a reversal of the judgment is that the trial court committed error in overruling the defendant's motion to quash the indictment. The motion was rested upon the plea that the grand jury returning the indictment was illegally assembled and lacking in authority. On February 27, 1939, near the close of the regular term of Floyd Circuit Court, an order was entered reciting that an emergency had arisen "due to the misplacement of various indictments," which required an investigation, and a grand jury was thereby ordered to be called and convened on March 2nd to investigate the cases in which the indictments had been misplaced, and "all other offenses or crimes which may be called to their attention." The record in this relation is very meager. There were thirty misplaced indictments, including fourteen against the appellant, deputy sheriff Parsons. A number of others were against deputy sheriffs Salisbury and Roberts charging them with malfeasance and false arrest. Substituted indictments were returned, including the one on which Parsons was tried in this case. We pass over the consideration of the several grounds argued as showing error in overruling the motion to quash the indictment because of technical invalidity in the procedure. It is sufficient to say that the defendant had waived his right to question it when he made the motion.

Section 157 of the Criminal Code of Practice is as follows:

"Upon the arraignment, or upon the call of the in-

dictment for trial, if there be no arraignment, the defendant must either move to set aside the indictment or plead thereto.''

The substituted indictment herein was returned March 2, 1939. Parsons was arrested and executed bond on March 7th. At a special term of court there is an order of March 21st passing the case to the 22nd. Then it was passed to the 23rd, then to the 29th, then to the 30th, and on each day it is recited that the defendant and the witnesses were present. On September 4th the case was continued and set for trial on the 18th. On that day the defendant filed a motion for a continuance supported by affidavits, and the case was on that motion passed to the 19th. On the 19th he filed his motion to quash the indictment. On that day the case was continued until the 1st day of January, 1940, and then passed to the 22nd, when the trial began. The record does not show that the defendant was arraigned and it is presumed that that procedure was dispensed with by the defendant's consent. Section 155, Criminal Code of Practice. But the record clearly shows that ''upon call of the indictment for trial'' (Section 157, Criminal Code), the defendant did not move to set aside the indictment. If he be given the benefit of a doubt that the case was called for trial when passed on the many occasions when he was present, it is certain that on September 18th it was called and he sought and was granted a continuance until the next day. Then it was that he filed his motion to set aside the indictment. That was too late. Brannon v. Commonwealth, 215 Ky. 589, 286 S. W. 785; Salyers v. Commonwealth, 275 Ky. 284, 118 S. W. (2d) 208.

The indictment was not defective because of indefiniteness or otherwise. It conforms in a general way to the indictment copied in Commonwealth v. White, 101 S. W. 331, 30 Ky. Law Rep. 1322, regarded as sufficient in that case and specifically approved in Carrol v. Commonwealth, 164 Ky. 599, 175 S. W. 1043.

The affidavit for continuance set forth what the defendant could prove if the witnesses were present, and it was agreed that the statements could be read as the testimony of the absent witnesses. The affidavit was hardly sufficient in form but the agreement was a waiver of that deficiency. However, the defendant did not offer

to read the affidavit until after the Commonwealth had introduced and closed its evidence in rebuttal. It was offered then just before the court instructed the jury. We do not think the circuit court abused a discretion in refusing to permit the testimony to be introduced at that stage of the case. The testimony of the absent witnesses was but cumulative, and its rejection was not prejudicial error.

The defendant submits that the court erred in admitting incompetent and refusing to admit competent evidence. There is no specification of error or argument. Appellant copies 12 or 13 pages of testimony in his brief, which may be regarded as an invitation to examine it and pick out the errors. It is a general rule that the court declines such invitations whether they be express or implied. Williams v. Commonwealth, 258 Ky. 574, 80 S. W. (2d) 573. However, we see no error. The statements and conduct of the other officers, both in relation to the prosecuting witness and her companions, as well as the occupants of the other car, were proper as res gestae.

The instructions conform to those outlined in Carroll v. Commonwealth, supra, as proper.

Perceiving no prejudicial error to the substantial rights of the defendant, the judgment is affirmed.

Judge Rees not sitting.