16043

STATE v. KIMBROUGH

(46 S. E. (2d) 273)

*Messrs. Thomas W. Whiteside* and *C. Yates Brown*, of Spartanburg, for Appellant,

*Mr. Samuel R. Watt,* Solicitor, of Spartanburg, for Respondent.

February 12, 1948.

OXNER, J. : This opinion will be substituted for the opinion heretofore filed.

Appellant was convicted of burglary. His appeal raises two questions: (1) Did the trial Judge err in refusing a motion for a directed verdict of not guilty on the ground that the evidence was insufficient to sustain a conviction? (2) Is the sentence imposed manifestly excessive?

Appellant offered no testimony. The circumstances relied on by the State to support a conviction are substantially as follows :

Between three and four o'clock on the morning of December 3, 1946, someone broke into and entered a room on the fifth floor of the Franklin Hotel located in the city of

Spartanburg and stole a watch and chain. This room was occupied by a prominent citizen of Spartanburg who had lived there for a number of years. He testified that about eight or nine o'clock on the night of the burglary he locked his door and retired, leaving his watch and chain on a small bookcase near the head of his bed; that shortly before 4:00 A. M. he woke up suddenly and saw a white man just as he left the room and closed the door; that he missed his watch and chain and immediately telephoned the night clerk and reported the occurrence. The clerk notified the police and requested two of the bellboys to meanwhile watch the elevator and stairways. One of these bellboys caught the elevator and the other went up the stairway, but neither saw anyone.

Several policemen who were in a radio patrol car in this vicinity received a call to go to the hotel and arrived in a few minutes. One of them went to the room that had been burglarized and found that the key had been pushed out and was hanging on the inside of the door. After talking to the occupant of this room and several of the hotel employees, this policeman proceeded to a room on the second floor which was occupied by appellant. (The testimony does not disclose what information was furnished this officer which led him to go to this room.) He testified: "I knocked on the door of this room when I got there. I heard sounds like someone pushing the screen out of the window. I could hear the tacks coming loose, made a sound. I knocked on the door and no one answered, but I could hear the screen being pushed out. After some length of time, Mr. Kimbrough (appellant) come to the door. I told him it was police—to come to the door. I still had to wait." This officer further testified that when appellant opened the door he was alone in the room and in his underclothes; that the cover on the bed "had been pulled back," but it was clearly apparent that no one had slept in it; that one of the windows to the room was up and the screen pushed out;

and that an examination showed the tacks holding the screen had been "freshly pulled out." Appellant was then arrested and carried to the room on the fifth floor in order to determine whether he could be identified.

The occupant of this room testified as follows on the question of identity: "His (appellant's) height and his shape —the shape of his back and his hair, as he turned his back— all were very much like the man I had seen. I could not positively identify him; his height and general shape and hair compared with the man I saw leaving the room." He said that the street lights and the light in the hall enabled him to make this observation.

The officers carried appellant to jail and then returned to the hotel. One of them went to appellant's room and held a flashlight out of the window in which the screen had been broken, while the other officer examined the ground underneath in an effort to find the watch and chain. They were soon found on the ground at a place almost, if not directly, under the window. The chain had been detached from the watch.

Appellant had a driver's license which gave his address as 872 Melton Street, Spartanburg, but inquiries at this place disclosed that he had never lived there. He stated to the officers that he did not have any home; that the last work he did was traveling with a carnival; and that his people lived in California. He declined, however, to discuss the charge which had been preferred against him.

The office and function of the Court in passing on a motion for a directed verdict of acquittal and the rule governing circumstantial evidence are well established in this State and need not be restated. We had occasion to discuss these questions and review the authorities in the recent case of *State v. Epes*, 209 S. C. 246, 39 S. E. (2d) 769. After careful consideration of the evidence, together with the inferences which may legitimately

be drawn therefrom, we think the Court below committed no error in refusing appellant's motion for a directed verdict of acquittal and submitting the case to the jury. There is strong circumstantial evidence tending to show that appellant had this watch and chain in his room and dropped them from the window to avoid being found in possession of this property. If the jury found that he had possession of this recently stolen property, this fact, with the other circumstances in the case, was sufficient to warrant an inference of guilt. *State v. Campbell et al.,* 131 S. C. 357, 127 S. E. 439; *McNamara v. Henkel,* 226 U. S. 520, 33 S. Ct. 146, 57 L. Ed. 330.

The remaining question is appellant's contention that the sentence imposed is unduly severe and manifestly excessive and violates that portion of Article 1, Section 19 of the Constitution which forbids the infliction of cruel and unusual punishment.

The punishment for burglary is fixed by Section 1138 of the Code of 1942, which is as follows: "Any person who shall commit the crime of burglary at common law shall, upon conviction, be imprisoned in the state penitentiary, with hard labor, during the whole lifetime of the prisoner: provided, however, that in each case where the prisoner is found guilty, the jury may find a special verdict, recommending him to the mercy of the court, whereupon the punishment *shall be reduced* to imprisonment in the penitentiary, with hard labor for a term of not less than five years." (Italics ours.) In the instant case the jury found a verdict of guilty with recommendation to mercy and the trial Judge imposed a sentence of thirty years.

We have been greatly perturbed by this feature of the case. In the opinion heretofore filed, a majority of the Court concluded that although the sentence imposed was rather severe, it was not so grossly disproportionate to the offense committed as to constitute a manifest abuse of discretion

on the part of the trial Judge. A petition for a rehearing was filed. It was granted solely as to this question which has now been reargued.

The Eighth Amendment of the Constitution of the United States, as well as the constitutions of a number of states, contains a provision similar to ours prohibiting cruel and unusual punishment. Although there are decisions to the effect that the provision against cruel and unusual punishment is applicable solely to the kind of punishment, and not to its amount or duration, according to the weight of authority, the punishment for a crime, while not cruel and unusual in kind may be so severe as to fall within the meaning of this provision. 15 Am. Jur., Criminal Law, Section 535, page 178. An interesting discussion of the history of this clause and the different views entertained as to its purpose and meaning will be found in *Weems v. United States,* 217 U. S. 349, 30 S. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705. It was stated in *Singletary v. Wilson, Superintendent,* 191 S. C. 153, 3 S. E. (2d) 802, that this constitutional restriction should be regarded as an admonition to both the legislature and the judiciary.

The power of an appellate court to review a sentence for the purpose of determining whether it offends the constitutional provision against cruel and unusual punishment may be sustained under the grant of power to correct errors of law in the judgment appealed from. 3 Am. Jur., Appeal and Error, Section 1182, page 689. Moreover, there exists in every court an inherent power to see that a man's fundamental rights are protected in every case. In *Matheson et al. v. McCormac et al.,* 186 S. C. 93, 195 S. E. 122, 125, the Court said: "In this state there is certainly no limitation on the power of the courts to settle and decree the rights of litigants, save as prohibited by the fundamental laws."

The weight of authority is to the effect that if the statute fixing the punishment for an offense is not unconstitutional, a sentence within the limits prescribed by such statute will not be regarded as cruel and unusual. 15 Am. Jur., page 174. It was held in *State v. Davis*, 88 S. C. 229, 70 S. E. 811, 34 L. R. A. (N. S.), 295, that this Court has no jurisdiction to correct a sentence on the ground that it is excessive when it is within the limits prescribed by law for the discretion of the trial Judge and is not the result of partiality, prejudice, oppression or corrupt motive. The rule there adopted has since been approved and followed in numerous cases. *State v. Bowman*, 137 S. C. 364, 135 S. E. 360; *State v. Johnson et al.*, 159 S. C. 165, 156 S. E. 353; *State v. Crosby*, 160 S. C. 301, 158 S. E. 685; *State v. Bolin*, 209 S. C. 108, 39 S. E. (2d) 197; *State v. Brandon*, 210 S. C. 495, 43 S. E. (2d) 449.

It was held in *Singletary v. Wilson, supra*, 191 S. C. 153, 3 S. E. (2d) 804, that where a statute fixes no maximum penalty for an offense but leaves the punishment to the discretion of the trial Judge, the exercise of that discretion, if clearly abused, is subject to review by this Court. In that case the constitutionality of a statute fixing the penalty for forgery was attacked upon the ground that no limit was fixed as to that part of the statute which provided for the imposition of a fine. The Court stated that there was no express constitutional requirement that the Legislature in the enactment of penal statutes shall fix the maximum penalty but held that when this was not done, "the power to impose a fine is limited by the constitutional provision that excessive fines shall not be imposed." After sustaining the validity of the statute involved which left the maximum amount of the fine to be imposed for forgery to the discretion of the trial Judge, the Court said: "It necessarily follows that the discretion of the trial Court in its determination of the amount of the penalty, where the maximum amount of

the fine is not fixed by the statute, must be subject to be reviewed on appeal to this Court, if clearly abused, under Article 1, Section 19 of the Constitution, which not only forbids the infliction of cruel and unusual punishment, but forbids the imposition of excessive fines."

Having discussed the power of this Court to review a sentence on the ground that it is so excessive as to constitute cruel and unusual punishment and the rule to be followed in passing on this question, we now turn to a consideration of the statute under which the sentence appealed from was imposed. Under its terms, where the jury finds a defendant guilty of burglary with recommendation to mercy, a minimum sentence of five years is fixed but the maximum is left to the discretion of the trial Judge. The Legislature having fixed no maximum penalty in the case of a recommendation to mercy, it is clear from the case of *Singletary v. Wilson, infra,* that the question before us is whether the circumstances of this case show a manifest abuse of discretion on the part of the trial Judge.

The statute under consideration does not expressly provide that when the jury adds a recommendation to mercy, the trial judge shall impose a sentence for a term less than the ordinary expectancy of life, but we think the provision that under such circumstances "the punishment shall be reduced to imprisonment in the penitentiary * * * for a term of not less than five years", contemplates that ordinarily the court should impose a term which reflects some concession to the defendant by reason of the jury's recommendation to mercy. However, it would be unreasonable to adopt a construction requiring the court in every such case to impose a term of years less than the probable natural life of the defendant. If a defendant convicted of burglary is a man of advanced years, the minimum sentence provided by this statute might be equivalent to life imprisonment. It is obvious that no hard and fast rule can be formulated governing the consideration

which should be given by the trial judge to the recommendation of the jury. The statute contemplates that he should have a wide degree of discretion. The sentence to be imposed would depend in some measure upon the view which the trial judge entertained as to the facts. The recommendation of the jury may be in flagrant disregard of the evidence. The trial judge should also take into consideration any material facts or circumstances of aggravation offered at the time the sentence is imposed which were not, and under the rules of evidence probably could not have been, presented to the jury. It is enough to say that where the trial judge, notwithstanding a recommendation of mercy, imposes a sentence that will probably extend beyond the natural life of the average prisoner, the record should disclose some reasonable basis for disregarding the jury's verdict. Under this statute, the recommendation of the jury is an important part of the verdict. The jury is required to not only determine the guilt of the accused but under this statute is permitted to some extent to pass upon the turpitude of the crime. To have a jury bring in a verdict recommending mercy on the strength of a charge that it may do so and thereby reduce the punishment from life to a term of years and then have the judge to disregard that verdict, would certainly appear illogical. It would tend to shake and weaken the confidence of the juries in the courts.

Everyone concedes that burglary is one of the worst of crimes and the offender should be severely punished, but still it, like every other crime, has its grades of aggravation and enormity. In the instant case, it is conceded that the sentence was based entirely upon the facts heretofore reviewed which show no particular circumstances of aggravation. It is reasonable to infer from this testimony that appellant did not have in his possession any burglar tools or a weapon of any kind. It was stated in oral argument that the report made to the officers by the Federal

Bureau of Investigation did not disclose that appellant had any past criminal record. From the evidence the jury evidently concluded that appellant should not receive the maximum punishment of life imprisonment, but the sentence imposed is to all intents and purposes the equivalent of a life sentence, which is the highest punishment permitted for the most aggravated form of the crime. There is nothing here which would justify the Court in disregarding the recommendation made by the jury. No one doubts that the able trial judge conscientiously endeavored to fix a sentence which he thought was fair and just, but under all the circumstances we are constrained to hold that the sentence imposed is manifestly too severe.

It is perhaps unnecessary to add that only under rare and unusual circumstances will this Court interfere with the discretion of the trial judge in the imposition of a sentence. The difficult duty and the weighty responsibility of determining the sentence to be imposed on a defendant is under most of our statutes properly left, within certain limitations, to the trial judge, who is in a much better position than this Court to fix the penalty to be imposed. As well stated in *Hawkins v. United States*, 7 Cir., 14 F. (2d) 596, 698: "There is no judicial function which makes larger drafts upon the fairness, common sense, sanity, and good judgment of the judge than that of fixing penalties for criminal offenses, nor one which more vitally affects the stability of free institutions. Excessive penalties are tyrannical in the court, and abhorrent to the public; on the other hand, penalties unduly mild seriously embarrass law enforcement and encourage infractions of the criminal laws."

It is suggested that under the Probation and Parole Act, Code 1942, § 1038-1 *et seq.*, appellant will probably not be required to serve the full term imposed, but we must determine this matter without reference to the statutory incidents of penal service, such as allowances for good time and eligibility to parole. 24 C. J. S., Crim-

inal Law, § 1980. Pardon, parole or commutation is an act of grace and a matter of discretion, and may be refused. A just sentence is imperative and must not be denied.

The conviction of appellant is affirmed but the sentence is set aside; and, in accordance with the practice followed in *State v. Gregory*, 198 S. C. 98, 16 S. E. (2d) 532, and earlier authorities cited therein, the case is remanded to the Court of General Sessions for Spartanburg County in order that appellant may be re-sentenced in accordance with the views herein expressed, with leave to both the State and appellant to offer any circumstances in aggravation or mitigation of punishment.

BAKER, CJ., and FISHBURNE, STUKES, and TAYLOR, JJ., concur.