**Richard WORKMAN and Isaac Pipes, Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 14, 1968.

Edwin W. Paul, Louisville, for appellants.

Robert Matthews, Atty.Gen., John B. Browning, David Murrell, Asst.Attys.Gen., Frankfort, for appellee.

OSBORNE, Judge.

This appeal is from an adverse ruling on a motion to vacate the judgment under RCr 11.42 made by appellants, who are presently incarcerated in the Kentucky State Penitentiary at Eddyville, Kentucky. The motion sought to set aside a judgment rendered in the Jefferson Circuit Court wherein the appellants were sentenced to confinement in the state penitentiary for life, without benefit of parole, under the provisions of KRS 435.090. The charge was forcible rape and the facts surrounding the act were as follows:

Between 9:45 and 10:00 p. m. on August 18, 1958, the appellants, Isaac Pipes and Richard Workman, broke a screen door of the residence of Mrs. Ida Miles, a woman 71 years of age, on Hazel Avenue, Louisville, Kentucky. They forced her onto a bed, gagged her and both appellants raped her several times, ransacked the house looking for money, and found and took $5.-00. Then they inserted into her person an instrument described as a squeegee mop handle. They were shortly arrested and brought before the juvenile court wherein a hearing was held in which they were waived to the grand jury to be dealt with as adults. After indictment by the Jefferson County Grand Jury on the charge of rape, the court appointed them an attorney and the case was set for trial. They appeared at the trial with their attorney and entered a plea of guilty to the charges. Punishment was fixed by the jury at con-

finement in the penitentiary for life, without benefit of parole.

They now contend in their petition before this court that this judgment should be set aside because:

1. Their constitutional rights were violated under sections 11 and 14 of the Kentucky Constitution and under the sixth amendment of the United States Constitution as interpreted and expanded under the fourteenth amendment in that they did not have counsel appointed for them during the proceedings before the juvenile court.

2. That the provisions of KRS 208.140 and KRS 208.120, the juvenile court act, were not complied with, thereby depriving them of due process.

3. That the provisions of KRS 435.090 providing for life imprisonment, without benefit of parole, constitute cruel and unusual punishment when applied to juvenile offenders.

We will deal with the first two contentions first. Chapter 208 of the Kentucky Revised Statutes, which is the chapter dealing with juvenile courts and their proceedings, has been in the law of this state since 1906 subject to certain amendments. This court has many times passed upon its constitutionality and has consistently held that it does not violate the provisions of either the Constitution of Kentucky or the United States Constitution. However, more recently the Supreme Court of the United States, in a line of cases, has cast some doubt upon the validity of procedures normally followed under juvenile acts similar to ours. In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, the court held that a similar act in force in the District of Columbia required a juvenile defendant be appointed counsel at a hearing wherein the accused was waived to be tried as an adult. The court therein stated:

"In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the District Court was potentially as important to petitioner as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel."

This case has been followed by two more recent ones, In re Gault, 387 U.S. 1, 87 S. Ct. 1428, 18 L.Ed.2d 527, and In re Whittington, 391 U.S. 341, 88 S.Ct. 1507, 20 L. Ed.2d 625 (rendered May 20, 1968), which we interpret to require the elements of due process be met in juvenile proceedings in state courts including the right to appointment of counsel. Smith v. Commonwealth, Ky., 412 S.W.2d 256. These cases leave little doubt but that appellants would be entitled to appointment of counsel in the juvenile proceedings were the hearing being held at this time. However, in the Smith case, supra, we declined to apply Kent retroactively. This determination was made as a matter of policy in order to keep from disturbing old judgments and disrupting an ordered system of justice. We believe this conclusion was proper. Therefore, the judgment will not be disturbed because of the failure of the juvenile court to appoint counsel.

Appellants make the further contention that the proceedings should be set aside because of irregularities in the appointment of the commissioner who heard the case and without detailing the arguments made we will only point out that the order of transfer was signed by the regular juvenile judge in the orders of the day. In Brown v. Hoblitzell, Ky., 307 S.W.2d 739, we held that the signature of the regular judge was sufficient to make the or-

der valid, even though the authority of the commissioner actually hearing the proceeding might be questioned. We believe that case is applicable to the situation herein.

■ This brings us to appellants' third contention, that life imprisonment without benefit of parole is cruel and unusual punishment when applied to juvenile offenders. We are inclined to agree with this proposition. Rape is the only offense in this jurisdiction where punishment without benefit of parole may be inflicted. As a philosophical matter one is caused to wonder why this be so. It is difficult to believe that the legislature thought this offense worse than others, especially murder. But, be that as it may, it remains the law of this jurisdiction and in our opinion validly so when applied to adults. However, a different situation prevails when punishment of this stringent a nature is applied to a juvenile. Juveniles are deprived of many of the benefits of the law of this state, merely because of their immaturity. They are not permitted to vote, to contract, to purchase alcoholic beverages or to marry without the consent of their parents. It seems inconsistent that one be denied the fruits of the tree of the law, yet subjected to all of its thorns. The eighth amendment to the Constitution of the United States prohibits cruel and inhuman punishment and section 17 of the Constitution of this state provides that, "excessive bail shall not be required, nor excessive fines imposed, nor cruel punishment inflicted." We have previously held where punishment is within the limits prescribed by the statute it could not be properly classified as cruel punishment. Golden v. Commonwealth, 275 Ky. 208, 121 S.W.2d 21; Fry v. Commonwealth, 259 Ky. 337, 82 S.W.2d 431. We have never previously held an act of the legislature to be in conflict with these constitutional provisions even though the penalties were quite severe in relation to the public injury or the individual harm. Tomlinson v. Commonwealth, 261 Ky. 186, 87 S.W.2d 376; Fry v. Commonwealth, supra; Turner v. Commonwealth, 191 Ky.

825, 231 S.W. 519; Coleman v. Commonwealth, 276 Ky. 802, 125 S.W.2d 728. However, we have recognized that the court does have the power to declare a penalty unconstitutional if it clearly and manifestly appears to be so. Weber v. Commonwealth, 303 Ky. 56, 196 S.W.2d 465. We have said the fixing of a penalty for crime is a legislative function and the question of what constitutes an adequate punishment is one left to the legislature. However, this was surely written with the proviso in mind that this court retains the power to determine whether or not an act of the legislature violates the provisions of the Constitution and even though constitutional provisions against cruel and inhuman punishment are generally directed to the kind of punishment as distinguished from its duration there nevertheless can be sentences so disproportionate to the offense committed as to shock the moral sense of the community. When this occurs the punishment would seem to fall within the prohibition of section 17 of the Constitution of Kentucky. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793; State v. Evans, 73 Idaho 50, 245 P.2d 788; Cox v. State, 203 Ind. 544, 550, 181 N.E. 469; State v. Ross, 55 Or. 450, 104 P. 596, 106 P. 1022, 42 L.R.A.,N.S., 601, Error dismissed, 227 U.S. 150, 33 S.Ct. 220, 57 L.Ed. 458; State ex rel. Garvey v. Whitaker, 48 La.Ann. 527, 19 So. 457, 35 L.R.A. 561; State v. Kimbrough, 212 S.C. 348, 46 S.E.2d 273, 21 Am.Jur.2d 564, § 614.

■ What constitutes cruel and unusual punishment has never been determined with any degree of exactness by the courts. The reason for this is probably because the concept changes with the continual development of society and with sociological views concerning the punishment for crime. There is no doubt but that the courts of England in Blackstone's day would have accepted means of punishment which would be completely intolerable in our time. However, there have been worked out by the courts over a period of years, certain general approaches to the

question which are most helpful. See Rudolph v. Alabama, 375 U.S. 889, 84 S.Ct. 155, 11 L.Ed.2d 119 (1963), (dissenting opinion by Goldberg, J.); Jordan v. Fitzharris, D.C., 257 F.Supp. 674. The first approach is to determine whether in view of all of the circumstances the punishment in question is of such character as to shock the general conscience and to violate the principles of fundamental fairness. This approach should always be made in light of developing concepts of elemental decency. This resolves itself into a matter of conscience and the principles to be applied to the individual case without a lot of attention. to ancient authorities. Lee v. Tahash, 352 F.2d 970, 972 (8th cir. 1965).

The next approach is likewise one of conscience but the test pits the offense against the punishment and if they are found to be greatly disproportionate, then the punishment becomes cruel and unusual. Weems v. United States, supra.

The third test is, does the punishment go beyond what is necessary to achieve the aim of the public intent as expressed by the legislative act? If it exceeds any legitimate penal aim, it is cruel and unusual. Weems v. United States, supra; Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758.

In examining the petition of the applicants before us, we are of the opinion that life imprisonment without benefit of parole for two fourteen-year-old youths under all the circumstances shocks the general conscience of society today and is intolerable to fundamental fairness. The intent of the legislature in providing a penalty of life. imprisonment without benefit of parole for the offense of rape undoubtedly was to deal with dangerous and incorrigible individuals who would be a constant threat to society. We believe that incorrigibility is inconsistent with youth; that it is impossible to make a judgment that a fourteen-year-old youth, no matter how bad, will remain incorrigible for the rest of his life. Therefore, so much of KRS 435.090 as permits confinement without parole constitutes cruel and unusual punishment and is in violation of section 17 of the Constitution when applied to a juvenile. Therefore, that portion of the judgment of the Jefferson Circuit Court which precludes the appellants from parole is hereby reversed and set aside. In all other respects the judgment is affirmed.

Judgment is affirmed in part, reversed in part.

WILLIAMS, C. J., and HILL, MILLIKEN, PALMORE and STEINFELD, JJ., concur.

MONTGOMERY, J., dissents.

MONTGOMERY, Judge (dissenting).

The effect of the majority opinion is to make eligible for parole two young men who have committed heinous crimes and have subjected their victim to an outrageous indignity. They should be content to serve their life sentences and give thanks that they did not receive the death penalty, which they so richly deserve. Instead, they may now be paroled and turned loose on society to rape and rob again.

I dissent from so much of the majority opinion which holds that the punishment for rape, a life sentence without parole, when applied to fourteen-year-old males is cruel and unusual punishment. The majority opinion is contrary to existing law and is an encroachment on the prerogative of the Legislature.

First, to answer the query in the majority opinion as to why rape is the only offense in this jurisdiction where punishment without benefit of parole may be inflicted: A murderer's victim does not live in shame —the victim of a rapist may live in shame and horror forever. The punishment was made to fit the offense.

The proposition advanced by the majority opinion that such punishment is cruel and unusual has no foundation in law. No cases are cited in support of it. The cases

in the majority opinion stand for the proposition that it is the prerogative of the Legislature to fix the punishment for an offense, and when the punishment given by the court is less than the maximum, in this case death, it is not cruel and unusual punishment. The courts "have steadfastly declined to interfere" in this matter of legislative judgment and discretion. Fry v. Commonwealth, 259 Ky. 337, 82 S.W.2d 431; McElwain v. Commonwealth, 289 Ky. 446, 159 S.W.2d 11. In Crutchfield v. Commonwealth, 248 Ky. 704, 59 S.W.2d 983, Rees, C. J., said:

"* * * The Legislature is the judge of the adequacy of the penalties necessary to prevent crime, * * *."

In Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793, 19 Ann.Cas. 705, the Supreme Court declared: "It is a precept of justice that punishment for crime should be graduated and proportioned to offense * * *." It held that in order to justify a court in declaring any punishment to be cruel and unusual with reference to its duration, it must be so proportioned to the offense committed that it shocks the moral sense of all reasonable men as to what is right and proper under the circumstances. The Legislature in fixing different punishments for the offense of rape may well have had in mind that this law would apply alike to all adults and to all juveniles, fourteen years old and older, who were to be treated as adults.

When the offense here is considered, it shocks one to read the majority opinion and find that the punishment is cruel and unusual. To say that the individuals involved here would not be dangerous or incorrigible or constant threats to society if released is to ignore reality.

At this time the lack of law and order is especially of prime concern. Our courts must bear their share of blame and shame for this condition. See Wedding v. Commonwealth, Ky., 394 S.W.2d 105, and Hall v. Commonwealth, Ky., 429 S.W.2d 359 (decided June 14, 1968). Decisions such as the majority opinion help to create the situation where it is not safe for women to be alone on the streets or even in their homes. Many surveys will be made and many remedies will be suggested. The courts should be the first to honor the responsibility for law and order. Until our courts quit coddling criminals, disobedience and disrespect for law and order will continue.

For these reasons I respectfully dissent.